Kelly *v.* Lane.

---

---

KELLY, Sheriff, &c. *vs.* LANE and others.

A sheriff may come into a court of equity to break down a fraudulent barrier that prevents him from collecting the effects of a debtor in an attachment, by a common law action; and the court having taken cognizance of the action for that purpose, may proceed to administer the justice which the case may require, upon the merits.

The moment an assignment made by debtors in trust for the benefit of their creditors shall be declared void as to creditors, money deposited to the credit of the assignees becomes credits or effects of the debtors, liable to be recovered by the sheriff, holding an attachment against the debtors, under section 232 of the code.

Debts, credits or effects held under a fraudulent title from a debtor in an attachment, are to be considered as the debts, credits or effects of the debtor, when the question is between the party holding under such fraudulent title, and an attaching creditor, or the sheriff who represents such creditor.

A sheriff, holding an execution issued against the property of a debtor who has made an assignment in trust for the benefit of creditors, which execution he is unable to collect, after having attached moneys deposited by the assignees in a trust company, being a part of the assigned property, or the proceeds thereof, may maintain an action against the debtor, his assignees, and the trust company, to have the assignment adjudged fraudulent and void as against the attaching creditor, and for the payment of the execution out of the money in deposit. SUTHERLAND, J. dissented.

APPEAL from a judgment ordered at a special term, on a trial before the court without a jury. On the 4th of March, 1861, Lanes, Boyce & Co., a New York firm, being

Kelly *v.* Lane.

insolvent and largely indebted, among others, to August Belmont & Co., made a general assignment of all the property and effects of the firm to Leroy M. Wiley and Frederick N. Lawrence, for the benefit of their creditors.    On the 17th of June, 1861, Belmont & Co. commenced an action in the supreme court, to recover their debt.    Subsequently, and on or about the 24th of June, 1861, an attachment, directed to the sheriff of the city and county of New York, was issued, in the action, on the ground that Lanes, Boyce & Co. had assigned and disposed of their property with intent to defraud their creditors.    Wiley and Lawrence, the assignees, accepted the assignment, and acted under it; and when the attachment was issued in the action of Belmont & Co. they had, as assignees, deposited with the United States Trust Company $60,000, a portion of the assigned property, or the proceeds of the assigned property.    Subsequently, and on the 25th of June, 1861, the sheriff undertook to attach, and so far as he could, did attach the funds so deposited by the assignees with the trust company, by leaving a certified copy of the attachment with the secretary of the company, with a notice showing that he intended to attach said funds.    The company thereupon delivered to said sheriff the following certificate, viz:

"The United States Trust. Co. of New York, No. 48 Wall, cor. William street, June 27th, 1861.    This certifies that this company *now holds* the sum of thirty-six thousand and one hundred and seventy-three dollars and eighty-eight cents *deposited by L. M. Wiley and F. N. Lawrence, assignees of the estate of Lanes, Boyce & Co., which funds* have this day been *attached* by the sheriff of the city and county of New York, in the matter of August Belmont and others against William G. Lane and others.

JOHN A. STEWART, Sec'y

*The amount in the hands* of the company, *to the credit* of the above named assignee, is sixty thousand dollars, *held subject* to attachment as above.

JOHN A. STEWART, Sec'y."

On the 9th day of July, 1861, Belmont & Co. recovered a judgment in the attachment suit, for $38,328.27, on which an execution was issued, which execution had not been re- turned, but remained in the hands of the sheriff wholly unsat- isfied, when this action was commenced, on the 21st of August, 1861. The suit was brought against Lanes, Boyce & Co. and Wiley and Lawrence, their assignees, and the United States Trust Company. The plaintiff, after setting forth the above facts, in his complaint, alleged that he had not been able to find any property of the judgment debtors to levy upon or seize under the said execution, and that the only property he had executed the attachment upon was the money in the possession of the trust company, and the resi- due of the assigned property in the possession of the assignees. That since said judgment was so recovered and said execution issued, the plaintiff had called on the United States Trust Company, and requested them to pay over to him said sum of $60,000 so attached as aforesaid, or so much thereof as might be sufficient to satisfy said judgment and costs, which said company refused. The plaintiff demanded judgment that the assignment be adjudged fraudulent and void as against the said August Belmont & Co. and the plaintiff, and that the said United States Trust Company pay to the plaintiff as such sheriff, on said execution, so much of said deposit of $60,000 in its possession as might be necessary to pay the said judgment of Belmont & Co., against Lanes, Boyce & Co., together with the costs and expenses of said attachment, and the costs and allowances of the plain- tiff in this action; and if said deposit should prove insuffi- cient for that purpose, then that the defendants, Leroy M. Wiley and Frederick N. Lawrence, assignees as aforesaid,

Kelly *v.* Lane.

pay to said sheriff the amount of the said judgment, costs, and allowances, or the residue thereof, as aforesaid, out of the assets of Lanes, Boyce & Co. in their hands, or the proceeds thereof; or for other and further relief, &c. The justice, before whom the action was tried at special term, dismissed the complaint, on the ground that the sheriff had no right to bring or maintain the action, against the defendants, even assuming the assignment to be fraudulent. From the judgment entered in pursuance of this decision, the plaintiff appealed to the general term.

*Thos. H. Rodman,* for the appellant. The plaintiff was and is entitled to maintain this action against the defendants, for the reasons contained in the following points : I. The plaintiff in this action represents the plaintiffs in the attachment suit, who at the time of the commencement of this action were judgment and execution creditors of the assignors in said assignment. (25 *Barb.* 431.)

II. The property assigned by the assignment of the defendants Lanes, Boyce & Co. to the defendants Wiley and Lawrence, if such assignment is fraudulent and void against creditors, is, *quoad* the plaintiff in this action or the plaintiffs in the attachment suit represented by him, the property of said assignors, and therefore liable to the attachment in that suit. If this were not so, the code which authorizes an attachment on the ground of a fraudulent assignment, would be nugatory ; for where the assignment is of all the debtor's property, there would be no property to attach. Certainly the code could not have intended to authorize an attachment where part of the property of the debtor had been assigned, and not where all the property had been assigned. (*Schlussel* v. *Willett, sheriff,* 34 *Barb.* 615. *Thayer* v. *Willett,* 9 *Abb. Pr. Rep.* 325. *Pratt* v. *Wheeler,* 6 *Gray's Mass. Rep.* 520. *Dixon* v. *Hall,* 5 *Mich. Rep.* 404. *Eaton* v. *Cooper,* 29 *Verm. Rep.* 444. *Potter* v. *Mather,* 24 *Conn. Rep.* 551. *Hall* v. *Stryker, Court of Appeals October*

1863, *reversing same case in* 9 *Abb. Pr. Rep.* 342, *and* 29 *Barb.* 105. *Rinchey* v. *Stryker*, 26 *How. Pr. Rep.* 75. *Peck* v. *Whiting*, 21 *Conn. Rep.* 206. *Beers* v. *Lyon, Id.* 605. *Falconer* v. *Freeman*, 4 *Sandf. Ch. R.* 565. *Van Etten* v. *Hurst*, 6 *Hill*, 311. *Van Kirk* v. *Wilds*, 11 *Barb.* 520. *Coffin* v. *Ray*, 1 *Metc.* 212. *Halsey* v. *Whitney*, 4 *Mason*, 206, 211. *Damson* v. *Bryant*, 2 *Pick.* 411. *Owen* v. *Dickinson*, 17 *Conn.* 492. *Angier* v. *Ash*, 6 *Foster*, 99. *Warner* v. *Norton*, 20 *How. U. S. Rep.* 443. *Tappan* v. *Evans*, 11 *N. H. Rep.* 311. *Grosvenor* v. *Gold*, 9 *Mass. Rep.* 209, 210. *Martin* v. *Dryden*, 1 *Gilm.* 188. *Drude on Attachments*, §§ 221, 226, 253.) In the above cases of *Schlussel* v. *Willett*, and *Thayer* v. *Willett*, it is settled that in case *judgment was obtained* in the attachment suit, the sheriff might defend under the attachment and litigate the fraudulent assignment. Consequently, the property thus attached was liable to be seized under the attachment. And now by *Hall* v. *Stryker*, in court of appeals October, 1863, reversing same case in 9 *Abb. Pr. Rep.* 342, and 29 *Barb.* 105, the sheriff may defend without a judgment. (*Rinchey* v. *Stryker*, *supra*.)

III. Whether that assigned property, therefore, was in the possession of the assignees or their depositaries, or others, it is equally so liable to the attachment, as appears by the code. (*See* §§ 235, 236.)

IV. The amount of the proceeds of the assigned property, deposited by the assignees with the defendant, the United States Trust Company, and so levied on or attached by the plaintiff in this action, was liable to such attachment, whether the money is denominated *a deposit* by, or *a credit* to, the assignees of Lanes, Boyce & Co. 1. The certificate given by the company to the plaintiff, on the service of the attachment, certifies "that the company *now holds* the sum of $36,173.38, *deposited* by L. M. Wiley and F. N. Lawrence, *assignees of the estate of Lanes, Boyce & Co., which funds* have this day been attached by the sheriff of the city and

Kelly *v*. Lane.

county of New York, in the matter of August Belmont and others, against William G. Lane and others. *The amount in the hands of the company, to the credit of the above named assignees,* is sixty thousand dollars, held subject to attachment as above." It is conceded and found by the court as fact, that the money deposited was the proceeds of part of the assigned property.    2. Thus the company certifies, that it holds, at the time of the attachment, and subject to the attachment, the identical funds deposited as the property of Wiley and Lawrence, as the assignees of the estate of Lanes, Boyce & Co. which funds had that day been attached, &c.    They were as much subject to the attachment, therefore, as if in the hands of the assignees, Wiley and Lawrence.    The identical funds deposited were attached before their appropriation by the company, and having come to the possession of the assignees by fraud, and without title, they could be seized or attached wherever traced or found; the property of the assignors in such case not being divested, *quoad* the creditors of the latter.    The title in the United States Trust Company could be no better than that of the party from whom it received the money, and which money, being traced to said company, it was subject to the attachment.    The company became a trustee for the real owner. (*Story on Bail.* §§ 102, 1232, *and authorities cited.    Taylor* v. *Plumer,* 3 *M. & Selw.* 562. *Hardman* v. *Wilcock,* 9 *Bing.* 382.    *Wilson* v. *Anderson,* 1 *Barn. & Adol.* 450. *Ogle* v. *Atkinson,* 5 *Taunt.* 759.    2 *Fonbl. Eq. B.* 2, *ch.* 1, § 1, *note b.    Scott* v *Seaman, Wills' R.* 400.    *Thompson* v. *Perkins,* 3 *Mason,* 232.    *Burdett* v. *Willett,* 2 *Vern.* 638. *Griggs* v. *Cock,* 4 *Simons,* 438.)    3. The United States Trust Company is specially a trust company, created to receive deposits in trust, and known to this court as such. It received the deposits in this case from the assignees as such, in trust, and as the proceeds of the assigned property. It held the money as a trust, for the account of the assignees, as such.    It was held by the company under a special, spe-

cific account with the assignees, in their representative capacity, the company having full knowledge that the funds belonged to the estate of Lanes, Boyce & Co. The effect, therefore, of these facts, is the same as in the case of a special deposit of money to be identically returned. (*See authorities under 2d subdivison of 5th point. Also Leigh* v. *McAuley,* 1 *Young & Coll. Exch. Rep.* 260, 265. *Story on Eq.,* § 1257, 1258, 1259, *and authorities cited. Adair* v. *Shaw,* 1 *Sch. & Lefr.* 262. *Taylor* v. *Plumer,* 3 *M. & Selw.* 574, 576. *Hassall* v. *Smithers,* 12 *Ves.* 119. 2 *Fonbl. Eq. B.* 2, *ch.* 5, § 1, *note c. Murray* v. *Lylburn,* 2 *John. Ch. R.* 441. *Lewin on Trustees, ch.* 11, § 2, 201–204. *Hill* v. *Simpson,* 7 *Ves.* 166.) 4. But even taking the deposit to be a mere credit to the assignees, as such, or otherwise, and merely obliging the trust company to pay back an equal amount of other money, it does not change the nature of the case. The proceeds of the assigned estate are traced to the hands of the company, and if the assignment is fraudulent and void, as against creditors, all the assigned property, including the claim against the trust company, is the property of the assignors, *quoad* the creditors of the latter. The company took the deposit with notice of the trust; and even if this were not so, it would not alter the case. There is no difficulty in a court of equity reaching it. In the case of *Wiley & Lawrence* v. *The Bank of the Republic,* this point was decided by the superior court, at special term, Justice Bosworth, recently, but the case is not yet reported. (*See, also, authorities cited under last subdivision.*) 5. The property liable to attachment under the code consists of all the property of the defendant, including debts, money, goods, chattels, rights in action, credits and effects. (*Code,* §§ 227, 231, 232.) Under the preceding points, this language of the code would include the claim against the trust company, it being a right in action or credit belonging to the assignors, Lanes, Boyce & Co., *quoad* their creditors.

Kelly *v.* Lane.

V. By the 232d section of the code, "the sheriff under the attachment shall collect and receive into his possession, all debts, credits and effects of the defendant," and "may take such legal proceedings either in his own name or in the name of such defendant as may be necessary for that purpose." The right of action in the sheriff is, therefore, coextensive with the property subject to the attachment, and as it has been already shown that the assigned property, and the credit or deposit in the United States Trust Company could be levied on, it necessarily follows that the sheriff could maintain an action to recover the money from the United States Trust Company, and as incident thereto, litigate the fraudulent assignment of Lanes, Boyce & Co. as an obstacle in the way of reducing into possession the property attached, it being in the language of the code "a legal proceeding, necessary for that purpose." 1. It has been shown, that the property seized was liable to the seizure under the attachment. 2. The sheriff is entitled by the 232d section of the code to bring all actions or take all legal proceedings, that may be necessary to reduce to possession the property attached. 3. By the decisions before referred to, viz. 34 *Barb.* 615, 9 *Abb. Pr. Rep.* 325, it is established, that if there was a judgment in the attachment suit, the sheriff might defend the seizure under the attachment and litigate a fraudulent transfer or assignment. There can be no difference between thus defending and bringing an action for the same purpose. If the right exists in the one case, the corresponding right exists in the other. And now, by the decision of the court of appeals in *Hall* v. *Stryker*, the point is rendered certain, even without a judgment. (*See also Rinchey* v. *Stryker, supra.*)

VI. The statute gives the remedy, in plain language, which should receive a natural interpretation, and not be nullified by a forced construction, not required by expediency or justice.

*Jere. Laroque,* for the respondents.   I.  In case of a disposition of property fraudulent as against creditors, it has long been the settled law, that an execution creditor, as against whose claim the law pronounces it void, can, notwithstanding the semblance of title in the grantee or assignee, (good though it be as between him and the assignor,) levy upon the goods and chattels; in other words, upon such property as forms the subject of a *venditioni exponas* in the hands of the sheriff, and that the fraudulent instrument forms no impediment in the way of his so doing.

II.  In like manner the law, after considerable diversity in the decisions of the different courts of original jurisdiction, is now settled by the judgment of the highest appellate tribunal, that the same thing may be done under an attachment. (*Rinchey* v. *Stryker,* 26 *How. Pr. Rep.* 75, *and cases cited.*)

III.  The *rationale* of these decisions is sufficiently obvious. The sheriff, holding an execution, or an attachment, proceeds against the goods and chattels of the defendant—against his property liable to a *venditioni exponas—in rem.* He seizes and takes possession of the *rem,* as the property of the defendant, and all adverse claimants have thereby notice to come in and assert their titles.   The true owner of such property, who has never been divested of it, may, by replevin, and so, also, may the sheriff, holding process against it, in favor of a creditor as against whom the person having possession has no title, seize and take it into their possession wherever they find it.

IV.  The same reasoning by no means applies, however, to the credits or choses in action of the defendant in the attachment or execution, which are not the subject of manual seizure or delivery, or of a *venditioni exponas*—the title to which rests in assignment or transfer in writing—and as to which the sheriff executes the process, not by seizure or taking possession, but by serving a copy of the attachment, with notice of what it is levied upon.   Here the question of the validity or invalidity of an assignment, by virtue of which a third

Kelly *v.* Lane.

person claims title, cannot be tried by the sheriff, upon such a seizure, for obvious reasons. The assignment is good between the debtor to the defendant in the attachment or execution and such defendant. It is also good as between the defendant and the assignee. It is also good as between the debtor to the defendant and the assignee. It is void only as between the very creditor who attacks it, and shows it fraudulent as to him, and the assignee. Such a proceeding would render a bill of interpleader necessary at the suit of every debtor to the defendant, whose debt was sought to be attached or levied upon, to interplead the sheriff and the assignee.

V. The plaintiff in this case has assumed to go even to a still more extraordinary length. He claims that by the simple service of the attachment on the bankers of the assignees, who are indebted to them on book account or certificate, for moneys deposited by them and not by the defendants in the attachment, he has effected a levy upon that debt, making it the duty of the assignees' bankers to pay to him under the attachment, and absolving them from the obligation of their contract with their depositors. The claim is as unprecedented as it is incapable of being sustained upon reason or authority.

VI. If such a proceeding were allowed, it would unjustly divest the lien acquired by creditors who have exhausted their remedy at law against the leviable property of the defendant, and acquired a priority by proceedings in equity to reach the equitable assets before the service of the attachment, in case the assignment should ultimately be declared void. It would also expose the debtors to the defendant in the attachment, whose debts have been assigned, and the assignees' bankers, to the unjust liability to pay twice, in consequence of their inability to absolve themselves from express obligations incurred in good faith to the assignees, on the faith of the assignment. (*Duncan* v. *Bates, MS. decision Supreme Court, special term,* 1*st district, per Ingraham, J., Nov.* 1858 ; *affirmed by general term, Jan.* 1859. *Atkinson* v. *Manks,* 1 *Cowen,* 691, 706, *in Court of Errors.* 2 *Story's*

Kelly *v.* Lane.

*Eq. Juris.* § 817 *b.* *Sherman* v. *Partridge,* 4 *Duer,* 646. *Hadden* v. *Spader,* 20 *John.* 554.　2 *R. S.* 173, 174, §§ 38, 39. *Corning* v. *White,* 2 *Paige,* 567.　*Farnham* v. *Campbell,* 10 *id.* 598.)

VII. If it be attempted to be answered that, by the service of the attachment, the sheriff not only has a right to seize and take the leviable property,. but also acquires a lien on the equitable assets, the reply is obvious.　That lien must be acquired, if at all, not by service on the assignees' bankers, or on the debtors to the defendant in the attachment, whose debts have been assigned, *but by service on the assignees themselves, and cannot be acquired otherwise.*　The party whose attachment has been so served may, perhaps, by proper proceedings in equity, (whether he can at all, or, if at all, whether before or after he has recovered judgment, it is not necessary to discuss here,) upon showing the assignment void as against him, have the proceeds of the assigned estate applied to the payment of his demand, like an execution creditor who has exhausted his remedy at law.　In so doing, he must take rank after the execution creditors, who have proceeded in equity to set aside the assignment, before the service of his attachment.　Proceeding to reach the credits and choses in action belonging to the assigned estate, through the assignees, he does not infringe upon the obligations which the assignees' bankers have rightly incurred to their depositors, or which the debtors to the assignor have rightly contracted with the assignees, after the assignment, by promising to pay them, or otherwise, and from which neither can be absolved by payment to a hostile claimant, setting up a title paramount to the assignees.　(*Bates* v. *Duncan, ubi supra, and other cases cited under Sixth Point.*)

VIII. If a proper case is made, showing danger by allowing the assignees to control the estate, and collect the assets, pending the litigation, the usual provisional remedies, by injunction and receiver, can be had by the plaintiff in such a proceeding, in the mean time.　It will be observed, however,

Kelly *v.* Lane.

that it is not necessary to hold that a creditor under an attachment may acquire a lien on the assigned estate, so far as it consists of choses in action and equitable assets, even by service on the assignees. His rights are fully protected without. If he can acquire such lien, on the other hand, he acquires an unjust preference over the less fortunate creditor, who is unable to obtain an attachment. They have equal chances in the race for judgment, and the commencement of proceedings to set aside the assignment; and in the interim either can obtain a receiver, or have the assignee removed, on showing misconduct or reason to apprehend the waste of the assigned estate.

IX. In this case, on the contrary, the attachment was never served on the assignees; but the theory of the plaintiff is, that by direct resort to the bankers of the assignees, he absolves them from all obligations which they may have incurred to the assignees, and acquires—not a lien upon the assigned assets and their proceeds in the hands of the assignees, generally—but a specific lien upon the specific items forming part of the assigned estate and its proceeds, upon the parties indebted to the assignees for which he serves the attachment. The fallacy of this theory is too plain to require argument to expose it.

X. Sections 232 and 237 of the code, which are relied upon by the plaintiff for his authority, as sheriff, to maintain such an action, do not at all reach the case, even if the plaintiffs in the attachment might maintain it; the fund sought to be recovered here being neither " debts, credits," nor " effects" of the defendants, and this being an action substantially against the assignees and assignors to set aside the assignment, and not an action against the debtor to the defendant in the attachment to recover the debt which he owes to the latter; and the learned judge at special term was clearly of that opinion.

XI. The obvious difference between a seizure by the sheriff of goods and chattels, claimed to belong to the defendant in

the attachment, but in the possession of an assignee, and an attempt to levy upon choses in action which have been assigned is, that in the former case the sheriff simply defends his right to the possession of the thing seized in the litigation which ensues, on the ground of the invalidity of the assignment; while, in the latter, he must assume the offensive, and become the attacking party in the litigation.

LEONARD, J. The only property of the debtors in the attachment suit, upon which service could be made by the sheriff, passed under an assignment from them to Wiley and Lawrence, made in trust for the benefit of creditors. This assignment was assumed by the learned justice before whom the action was tried, to be fraudulent, as a conclusion of law, as to creditors, and no facts were found by him upon the issues made by the pleadings in that respect, but the complaint was dismissed upon the sole ground of the want of authority in the sheriff to maintain this action. It will be assumed, therefore, in considering the appeal herein, as it was by the justice below, that the assignment was and is fraudulent as to creditors.

Had the assigned property, consisting of merchandise the proceeds of which, in cash, are now deposited in the United States Trust Company to the credit of the said assignees, remained in the hands of the said assignees, as merchandise, at the time the attachment was issued to the sheriff, it can not be disputed that it might have been seized, and that the sheriff could have maintained his title, under the attachment, against any action brought by the assignees to recover its possession or value, upon the ground that the title of the assignees was fraudulent and void as to creditors, of whom the sheriff would stand as the representative. And this defense would be open to the sheriff notwithstanding no judgment had been yet recovered in the attachment suit.

These principles are now settled, after considerable conflict of legal authority, by the court of last resort in this state,

Kelly *v.* Lane.

all the judges of that court concurring. (*Rinchey* v. *Stryker*, 26 *How. Pr. Rep.* 75.)

It has been held, in this action, by the judgment at special term, in substance, that the attachment issued on behalf of the creditors against their debtors can not be made effectual to reach the property of these debtors so assigned, notwithstanding the fraudulent character of the assignment, because the property is no longer tangible, but has been converted by the assignees into money, and so deposited in the trust company as to create the relation of debtor and creditor between the assignees and the said company in respect to the fund. If this position is correct, the judgment must be affirmed ; otherwise the plaintiff will be entitled to a new trial.

It is made the duty of the sheriff to collect and receive into his possession all debts, credits and effects of the defendants against whom an attachment has been issued. (*Code,* § 232.) The sheriff is to make such collections subject to the direction of the court or judge, and it is not probable that he would be allowed to collect any greater sum than would be sufficient to satisfy the demands for which the process in his hands had been issued, and perhaps he might not be permitted to collect debts, &c. in case there were tangible property upon which the attachment could be levied.

Clearly, the sheriff would be permitted, in a proper case, to maintain an action to recover money due from any person to the debtor in the attachment upon open account, bond, bill, note, check, &c. What significance is to be given to the word " effects," contained in section 232 ? It is used to mean something in addition to "*debts and credits.*" Is money or other effects fraudulently disposed of by a debtor, and attempted to be concealed from his creditors, to be held beyond the reach of action by the sheriff under this section, on the ground that the relation of debtor and creditor does not exist between the defendant in the attachment and the fraudulent possessor ? The money or other effects, fraudulently concealed or disposed of, would, as to judgment creditors, be

considered the property of the debtor in the attachment. It is true the fraudulent assignor could maintain no action to recover his money or property so disposed of. As against him, the fraudulent title may be valid. The objection as against a creditor is very different. A judgment creditor having an execution returned unsatisfied, can maintain his action in a court of equity to have any fraudulent disposition of his debtor's money or other property set aside, on the ground of fraud, and applied to the satisfaction of his judgment. This relief is granted under the equitable power of the court, without any lien on the part of the creditor.

Here it is the assignment only that prevents the money deposited by the fraudulent assignees from being considered assets of the debtors in the attachment, at common law. It can not be said that the sheriff must be denied all relief in the courts, under section 232, except that which is usually denominated of a common law character.

Unless we are to adopt such a rule, there can be no good reason for holding that the sheriff may not come into a court of equity to break down a fraudulent barrier that prevents him from collecting the effects of the debtor in an attachment by a common law action, and having taken cognizance for that purpose, proceed to administer the justice which the case may require upon the merits.

There is no distinction in principle between the rule which permits the sheriff to impeach the title of a fraudulent assignee of a debtor in an attachment, in order to maintain his seizure of property belonging to such debtor, in an action brought against the sheriff, and permitting the affirmative assertion of fraud in an action brought by the sheriff to recover debts, credits or effects of the debtor in the attachment, held by an assignee of the debtor under a title fraudulent as against creditors. The moment the assignment from these creditors shall be declared fraudulent as to their creditors, by a court of competent jurisdiction, the money deposited to the credit of their assignees becomes

Kelly *v.* Lane.

credits or effects of the debtors, liable to be recovered by the sheriff in an action under § 232. The true and liberal construction of this section of the code requires us to hold that debts, credits or effects held under a fraudulent title from a debtor in an attachment are to be considered as the debts, credits or effects of the debtor, when the question is between the party holding under such fraudulent title, and an attaching creditor, or the sheriff who represents such creditor. This principle is necessarily to be implied from the provisions of the code in relation to the remedy by attachment, and the decision of the court of appeals before adverted to. It is the application of a principle analogous to the relief afforded by a court of equity in removing an impediment which prevents a creditor from obtaining satisfaction by a levy and sale on an execution.

The principle insisted on by the learned counsel for the respondents, and recently applied by this court in another case, by which the trust company was denied the right to interplead the attaching creditors and their depositors, Wiley and Lawrence, assignees of Lanes, Boyce & Co., in respect to the fund in question, has no application here. While it may be true that the trust company could not be permitted to call in question, in a court of justice, the right of their depositors to the money deposited with the company to their credit, it by no means follows that a creditor, or the sheriff representing a creditor under an attachment, may not impeach the title of the depositor to the same fund. The theory of that decision was, that it was the business of the creditor to enforce his rights, and not for the trust company to volunteer for the purpose of raising a litigation which the creditor might not think proper to encounter.

It was suggested at the argument that the attaching creditors, if successful here, would obtain an advantage over prior actions by judgment creditors which had been commenced to have the assignment in question declared to be fraudulent and void. No such fact appears from the papers

in this case; but if there are such suits, the result antici-
pated need not necessarily follow.   The determination of the
present action affects only the parties to it.   Whenever other
parties shall make it appear to the court, in a proper pro-
ceeding for that purpose, that they have prior or better rights
to the fund in question, the judgment in the present case
can be no obstacle to their obtaining it.

We adjudge only upon the rights of the parties before the
court in the present action.

The judgment should be reversed and a new trial ordered,
with costs to abide the event.

CLERKE, J. concurred.

SUTHERLAND, J. (dissenting.   After stating the facts.)
I think the complaint was properly dismissed, on the following
grounds:

1st.   The sheriff had no interest which gave him the right
to be the plaintiff in the action.   The action is brought for
the exclusive benefit of Belmont & Co. the judgment credit-
ors.   If the assignment is declared fraudulent and void, and
the sheriff recovers the money, he will of course pay it over
to Belmont & Co.   If the assignment was or is fraudulent
and void, it was and is fraudulent and void as to the creditors,
not as to the sheriff.   Not only had the sheriff no interest
which could properly make him the plaintiff, but he is wholly a
volunteer plaintiff, unless the service of the attachment on the
trust company, made it his duty as sheriff to bring the action.

2d.   It can not be seriously claimed that the sheriff had a
right to bring the action as the trustee of an express trust.

3d.   It follows, if the sheriff has a right to maintain the
action, that it is by the express authority of some statute.
(*Code*, §§ 111, 113.)   The presiding justice, in his opinion,
refers to section 232 of the code, as containing this authority.
This section, after speaking of the manner in which the sheriff
shall proceed on the attachment, and directing him to keep

Kelly v. Lane.

the property seized, or its proceeds, to answer the judgment which may be obtained in the action, says, that he " shall, subject to the direction of the court, or judge, *collect and receive into his possession all debts, credits and effects of the defendant."* But it is plain that this action was not brought to collect a debt, &c. of the *defendants in the attachment suit*, within the meaning of this provision of the code. The sole purpose of this action is, to reach *equitable assets beyond the reach of the attachment and execution in the attachment suit;* and yet the claimed *legal* lien acquired by the service of the attachment, is pointed to, as the foundation of the sheriff's right to maintain the action. The fact is, the sheriff did not, by the service of the attachment on the trust company, attach a debt or credit of Lanes, Boyce & Co., the defendants in the attachment. Though the assignment should be declared fraudulent and void as to their creditors, yet it was and is valid as to them. The relation of debtor and creditor did not exist between the trust company and Lanes, Boyce & Co. when the attachment was served on the trust company. If the deposit of the moneys by the assignees with the trust company created a debt, it was a debt of, or to, the assignees. If the sheriff should obtain a judgment in this action, setting aside the assignment, and declaring Belmont & Co. equitably entitled to enough of the funds in the hands of the trust company to pay their debt, this judgment would be entirely consistent with the fact *that when the attachment was served* the trust company was not indebted to Lanes, Boyce & Co., and therefore that the sheriff did not and could not attach any debt of theirs. In granting the relief asked for by virtue of its equity powers, the court would not be required to declare, and never could or would declare, otherwise.

It appears to me, therefore, that the reasoning to show the sheriff's right to bring this action by the express authority of section 232 of the code, not only assumes that when the attachment was served on the trust company, the assignment was void even as between the assignors and assignees, but also

that the assignment had been judicially declared void as to Belmont & Co., though they had not then recovered a judgment, and though the very question in this case is, as to the authority of the sheriff to bring an action *to have the assignment declared void,* and that these unauthorized assumptions are not the only defects of the argument; for the relief asked for by the complaint, if granted, would be entirely consistent with the fact that when the attachment was served, the trust company was not indebted to Lanes, Boyce & Co. but to their assignees, for or in the amount deposited by the assignees.

It is not necessary to question the right of the sheriff to go into a court of equity, if necessary, to collect debts, credits and effects *of the defendant in the attachment in fact attached by him.*

4th. It appears to me that the recent decision of this general term, in the case of *The United States Trust Co.* v. *Wiley and others,* (41 *Barb.* 477,) that the trust company, under the circumstances, could not maintain a bill of interpleader, is inconsistent with the conclusion arrived at by my associates in the principal case. I think the decision referred to was right.

5th. I have never doubted that the sheriff, when sued for seizing chattels under an attachment or execution, by a third party, claiming under assignment from the defendant in the attachment or execution, might show as a defense, that the assignment was fraudulent and void as to the plaintiff in the attachment or execution; but does it follow that the sheriff upon or after such seizure could bring an action in his own name, to have the assignment set aside as fraudulent? I think such an action would be an anomaly.

· An attachment or execution directs the sheriff to seize the goods and chattels of the defendant. He seizes certain chattels as the chattels of the defendant. If made an *involuntary* defendant for such seizure, it is reasonable that he should be permitted to show for his own protection, if not for the ben-

efit of the attaching or execution creditor, the assignment to be fraudulent, and that as to such creditor the chattels were at the time of the seizure the chattels of the defendant in the attachment or execution; but does it follow that the sheriff could, after the seizure, *volunteer* to bring an action to have the chattels declared the chattels of the defendant in the attachment or execution? The attachment is his authority for making the seizure, at the peril of being able to show, in a suit against him, the alleged assignment to be fraudulent and void; but where is his authority for bringing the action to have the assignment declared fraudulent and void?

6th. This action by the sheriff, so far as I am informed, is without precedent. It is not a violent presumption, that Lanes, Boyce & Co. at the time of their assignment, had many creditors beside Belmont & Co., and that other creditors, before the attachment was served on the trust company, were in a position to commence, and had commenced, actions to set aside the assignment as fraudulent, and reach the equitable assets. It is difficult to see any possible motive for serving the attachment on the trust company, and then under color of the claimed legal lien acquired by such service, commencing this action in the name of the sheriff, other than to displace or forestall such prior equities, and gather the fruits, which superior diligence had equitably entitled such other creditors to.

If this was the motive or purpose, we are not called upon in this case to strain the law to create a precedent.

On the question of the right or power of the sheriff to bring this action, it is sufficient to give force to this suggestion, that there may have been such prior equities. It is not an answer to it, to say that the sheriff may have to take the relief asked for in this action subject to such prior equities. Such qualified right or decree is not consistent with the theory of the sheriff's right to bring the action.

7th. If my brethren are right in the conclusion they have come to, and it is established as a rule or principle of law,

Kelly *v.* Lane.

that the sheriff had a right to bring this action in his own name, then sheriffs, in addition to their other powers and duties, are the grand trustees, prosecutors or almoners of, or for, defrauded creditors; and it is their duty to hunt up, and ferret out frauds, and bring actions to reach *equitable assets,* in their own names, for the benefit of defrauded creditors.

I can not think there is any law clothing sheriffs with any such general, adminsiterial, officious official capacity, or duty.

8th. It is doubtful whether the judgment creditors, Belmont & Co., on the facts stated in the complaint, could have maintained the action. *The execution had not been returned when the action was commenced.* It can not be said that the assignment was an obstruction in the way of their execution; for if the assignment had been out of the way, their execution could not have reached the funds in the hands of the trust company.

9th. The presiding justice, in his opinion, remarks, more than once I think, that it is conceded the assignment is fraudulent and void as to creditors. I presume nothing more is meant by this than that in examining and deciding the question of the right of the sheriff to bring and maintain the action in his own name, it may or should be conceded that the assignment is fraudulent and void. I am not aware of any concession as to the fraud, other than this logical concession. The answers of the defendants who have answered, other than the trust company, put in issue the alleged fraud. I know of no concession in fact as to the fraud.

I think the judgment appealed from should be affirmed, with costs.

Judgment reversed.

[NEW YORK GENERAL TERM, November 7, 1864. *Leonard, Clerke* and *Sutherland,* Justices.]