## SUPREME COURT.

Augustus W. Greenleaf and others agt. Peter R. Mum-
ford and others.

An *attachment* cannot be levied and a lien acquired upon money of a debtor depos-
ited in a bank by another in the name of the latter, to whom the bank has given
credit therefor; although the deposit be made collusively with the debtor, and
fraudulently as to his creditors.
Neither can an action be maintained by the sheriff, or by a judgment creditor, in
aid of such attachment, or to declare or create a lien on the fund, when none was
acquired by the attachment proceedings.

*New York General Term, April,* 1868.
*Before* Barnard, *P. J.,* Ingraham *and* Sutherland, J. J.

The plaintiffs having obtained an attachment against the
property of the defendant Mumford, which the sheriff
attempted to execute, upon money deposited in the Nassau
Bank, it was found that the money had been deposited in
the name of the defendant Oakey, who had drawn checks
against it to his own order, got them certified by the bank,
and then left them unindorsed in his box in the bank. Both
Oakey and the bank at first denied that the money was the
property of Mumford, or subject to the attachment. To
prevent Oakey from indorsing the checks and drawing the

money, and the bank from paying it, and thus to remove the impediments to the levy under the attachment, this action was brought.

The court below held that the sum of $53,000, so deposited by Oakey in the Nassau Bank, was really deposited for the use and benefit of Mumford, and belonged to Mumford; and that the drawing of the checks and getting them certified by Oakey, was a contrivance on the part of Mumford and Oakey to screen the money from the creditors of Mumford, and to prevent or defeat, the levy of an attachment or execution thereon. The court also found that the levy was duly made, and that the plaintiffs were entitled to the satisfaction of their judgment out of the fund.

No one of defendants appeals except Speyers, who claims as assignee of Mumford, under an assignment executed after the levy.

CHARLES A. RAPALLO, *for defendant Speyers*.
D. D. FIELD, *for the plaintiffs*.

SUTHERLAND, J. The exceptions to the conclusions of law, that the service of the warrant of attachment on the Nassau Bank constituted a levy on the fund in question; that the money deposited by Oakey in the Nassau Bank was bound by the levy made under the attachment; and that the plaintiffs were entitled to the judgment specified in the fifth conclusion of law, were all well taken. These conclusions of law were all plainly erroneous, for the reason that they all assume that the sum of $53,000, deposited by Oakey in the Nassau Bank, for which the bank had given him credit, and for which the bank had certified checks drawn by Oakey against the fund, was capable of being attached as a debt due or owing from or by the bank to the defendant Mumford. In other words, these conclusions of law and the judgment quietly assume against the defendant Speyers the main point in the case; and erroneously assume it; for the

facts found show that there was no debt due or owing from the bank to Mumford on account of the $53,000, or its deposit, when the attachment is alleged to have been served. The main question in this case is not as to the regularity or sufficiency of the service, or attempted service of the attachment; but the main question is, do the facts found show that there was any debt, fund, or thing which was or could be attached or levied on? Plainly they do not.

The transaction between Mumford and Oakey as to the $53,000, however fraudulent and void as to the plaintiffs and other creditors of Mumford, was valid as between Mumford and Oakey; and whatever the right of the plaintiffs and other creditors, with judgments and executions returned *nulla bona,* to have the transaction declared fraudulent and void, and reach the fund in equity, the plaintiffs could not reach the fund with their attachment in their action against Mumford for their debt. The plaintiffs could only attach the fund as a debt of the bank to Mumford; but the facts found in this case show that the debt arising from the deposit in the bank by Oakey and the credit given by the bank to Oakey, was a debt of the bank's to Oakey, and not a debt of the bank's to Mumford. To say that the fund deposited in the bank by Oakey, and for which the bank had given him credit, and on account of which the bank had certified the checks of Oakey drawn against the same, could be reached by attachment in the action of the plaintiffs against Mumford for their debt; or to say that the fund was attached in that action, because the court below found in this action that the transaction between Mumford and Oakey was fraudulent and void, as to the plaintiffs and other creditors of Mumford; and that the fund so deposited by Oakey in equity belonged to the creditors of Mumford; is to say that you can give the finding and judgment in this action (commenced before the plaintiffs had got a judgment for their debt), on the question of fraud, an *ex post facto* operation, and that you can by this *ex post facto* operation support the attachment proceedings

in the first action, and the lien and preference claimed by the plaintiffs to have been acquired under or by the attachment proceedings in the first action.

Why, the very claim of the counsel for the plaintiffs, that this action is an action to subject the fund in question to the attachment in the first action, involves the admission that it was not and could not be attached in the first action, and that the plaintiffs did not and could not, by the attachment proceedings in the first action, get any lien on the fund, and that they did not and could not, by their attachment proceedings in the first action, obtain any right or preference to have their debt paid in full out of the fund. And a claim that the fund was attached in the first action because the court below found, in this action, that the transaction between Mumford and Oakey was fraudulent and void as to Mumford's creditors, involves the same admission, that the fund was not attachable in the first action.

There is really no such thing as an action, either by the creditor or sheriff, to subject chattels or debts to an attachment issued under the Code. It is the Code which subjects property to attachment. Whoever heard, until recently, of an action either by a sheriff or creditor in aid of the Code, to subject property to attachment—to make that attachable under the Code which was not attachable under the Code.

In the case of *Kelly, sheriff* agt. *Lane and others,* I dismissed the complaint at special term, on the ground that the sheriff could not maintain such an action. There was an appeal, and it was reversed by the general term. For a more full discussion of the question, I refer to my dissenting opinion in that case at general term. (*See Kelly* agt. *Lane,* 42 *Barb.* 610.) I think I may say that the views expressed in my dissenting opinion in *Kelly* agt. *Lane,* were fully and unequivocally sustained by the court of appeals in *Lawrence* agt. *The Bank of the Republic* (35 *N. Y. R.* 320 *S. C.* 31 *How. Pr. R.* 502.) True, perhaps I did not say in *Kelly* agt. *Lane,* either at special or general term, that a creditor could not

bring such an action, for I had no occasion to say it; but my reasoning applied equally to such an action by a creditor.

Judge MORGAN, in his opinion in the court of appeals, in *Lawrence* agt. *The Bank of the Republic* (*supra*), does not say in words that a creditor could not maintain such an action; but as the questions in the case arose on the defendant's answer setting up the attachment proceedings by the defendant, the question whether either the defendant or the sheriff could have maintained such an action, was before the court. It does not appear that there had been a suggestion by counsel, if the sheriff could not have maintained such an action, that the defendant could. It was natural, therefore, that the judge should in words limit his opinion to the question which had been discussed, whether the sheriff could have maintained such an action. I venture to say that the learned judge and the counsel assumed if the sheriff could not have maintained such an action, the defendant could not.

I dismissed the complaint in *The Merchants' & Traders' Bank* agt. *Dakin and others*, at special term, on the ground (*see* 28 *How. Pr. R.* 510 *and* 511) that the plaintiff, as a judgment creditor, with an execution out and not returned, *nulla bona*, could not maintain the action, the bond and mortgage sought to be reached and applied to the payment of the judgment being choses in action, or equitable assets. There had been an attachment issued in the action in which the judgment was obtained, under which attachment it was claimed that the bond and mortgage had been attached as a debt due or owing from the defendant *Miller* to the defendant *Dakin.* I dismissed the complaint, irrespective of the question whether the attachment proceedings did or could aid the plaintiff in maintaining the action. I assumed that the attachment proceedings did not enable the plaintiff to maintain the action. There was an appeal; and it seems (*see* 33 *How. Pr. R.* 316) that the general term, instead of passing upon the point upon which the complaint was dismissed at special term, affirmed the judgment of dismissal

on the ground, substantially, that though the sheriff might have maintained an action to subject the bond and mortgage to the attachment, notwithstanding their formal and alleged fraudulent assignment by Dakin to the defendant Jewell *before the attachment proceedings*, yet that the plaintiff, the creditor, could not.

*Lawrence* agt. *The Bank of the Republic* was decided by the court of appeals at the March term, 1866. *The Merchants' and Traders' Bank* agt. *Dakin and others*, was heard by the general term, at the January general term, 1867.

It is certainly singular that Justice LEONARD, who wrote the elaborate opinion of the general term in the last mentioned case, should be repeated as having concurred in Judge MORGAN's opinion in the court of appeals, in *Lawrence* agt. *The Bank of the Republic.*

If the moneys deposited by Oakey in the Nassau Bank were regularly and properly attached, in the action by plaintiffs to recover a judgment for their debt, either as the moneys of Mumford or as a debt of the bank's to him, there was no necessity or occasion for this action; and if they were not so attached in the first action, this action could not be maintained in aid of the attachment proceedings, or to declare or create a lien on the fund, when none was acquired by the attachment proceedings.

This action was commenced before the plaintiffs had obtained judgment in their action in which the attachment was issued, and after the assignment by Mumford to the defendant Speyers, for the benefit of all of Mumford's creditors, equally and without preferences.

The purpose of this action was to have the transfer of the $53,000 by Mumford to Oakey, and the deposit of it by Oakey to his own credit in the Nassau Bank, judicially declared fraudulent and void as to the plaintiffs, as attachment creditors of Mumford; and to have it further judicially declared, that the moneys had been attached in the action in which the attachment had been issued as the moneys of

Mumford, so that the plaintiffs might obtain the further judicial declaration, and a judgment, in this action, that they should be paid their debt in full out of these moneys, instead of taking their share under the assignment with other creditors, whose debts were equally meritorious with their own.

Now it appears to me, in view of the maxim, "that equalty is equity," and in view of the circumstance that the very institution of this action must be regarded as a confession that the moneys had not been attached, it must have required great courage, or a great confusion of ideas, and a gross misapplication of analogies, to bring the action.

Upon what rests the power of the court below to find, as was found in this case, that the service of the attachment was a good and valid service, and that the money in question was bound by the levy under the attachment, and "that the same has been properly subjected to the execution issued on the judgment" entered in the attachment action? The attachment proceeding was a statutory proceeding under the Code, and regulated by the Code. Upon what rests the power of a court of equity to interfere with it, to declare moneys to have been attached which had not been attached; a levy to have been made and a lien acquired, when in fact there was neither a levy nor a lien; to declare that to have been done and that to have existed which was never done and never did exist; to declare a fiction to be a fact?

There are fictions of law, but the maxim is "*in fictione juris semper subsistit æquitas.*"

"Equality is equity," and we are not called upon in this case to strain a point to initiate a principle, or to create a precedent, that the plaintiffs may be paid their debt in full at the expense of other creditors equally meritorious. My excuse for this rather elaborate opinion on a queston which I deem so plain must rest on the cases which have been referred to, and on the fact that I am writing this opinion

upon a reargument ordered in this case, after judgment of affirmance by the general term.

As the answer of the defendant Speyers, the assignee, asks for the affirmative relief, and as the necessary parties appear to be before the court, and as there is not a doubt that the conclusion of the court below, that the transaction between Mumford and Oakey, and the deposit of the $53,000 by Oakey in his own name, was fraudulent and void as to the plaintiffs and other creditors, I think we can and should declare and adjudge that the defendant Speyers, as assignee, was and is entitled to the whole fund in question, which it seems was deposited in the New York Life Insurance and Trust Company, by order of the court, to be distributed under and according to the assignment, and that it be paid over to him for such distribution, leaving him to take such action on or as to the bond, which was given for the repayment of so much of the fund, with interest, costs and damages, as was paid to the sheriff by order of the court, in satisfaction of the plaintiffs' execution, as he shall be advised to take; and I think that the judgment appealed from should be reversed, and the plaintiffs' complaint dismissed with costs.