Greenleaf *v.* Mumford.

———————◆———————

AUGUSTUS W. GREENLEAF and others *vs.* PETER R. MUM-FORD and others.

Money deposited by an individual in a bank, in his own name, and credited to his account, and on account of which the bank has certified checks drawn by him against the fund, is not capable of being attached as a debt due or . owing from or by the bank to another person.

And the service of a warrant of attachment upon the bank, by creditors of another person, claiming that the fund belongs to the latter, instead of the depositor, will not constitute a levy upon the fund.

Creditors can only attach a fund in bank as a debt of the bank's. to the debtor of the former. If the facts found show that the debt arising from a deposit by one person to his own account, and a credit given by the bank to the depositor, is a debt of the bank's to such depositor, and not to another person, the fund cannot be attached as the property of the latter; although the court finds that the transaction between the depositor and such third person was fraudulent and void, as to the plaintiffs and other creditors of the third person, and that the fund so deposited in equity belongs to such creditors.

There is no such thing as an action, either by creditors or the sheriff, to subject chattels or debts to an attachment issued under the Code. It is the Code which subjects property to an attachment.

If moneys deposited in bank are regularly and properly attached, either as the money of the plaintiffs' debtor, or as a debt of the bank's to him, there is no necessity or occasion for an action in aid of the attachment; and if they are not so attached in the attachment suit, a second action, in aid of the attachment proceedings, or to declare or create a lien on the fund, when none was acquired by the attachment proceedings, cannot be maintained.

Greenleaf *v.* Mumford.

In view of the maxim that "equality is equity," the court will not, under such circumstances, strain a point to initiate a principle, or to create a precedent, that the plaintiffs in the attachment suit may be paid their debt in full, at the expense of other creditors equally meritorious.

THE plaintiffs having obtained an attachment against the property of the defendant Mumford, which the sheriff attempted to execute, upon money deposited in the Nassau Bank, it was found that the money had been deposited in the name of the defendant Oakey, who had drawn checks against it to his own order, got them certified by the bank, and then left them unindorsed in his box in the bank. Both Oakey and the bank at first denied that the money was the property of Mumford, or subject to the attachment. To prevent Oakey from indorsing the checks and drawing the money, and the bank from paying it, and thus to remove the impediments to the levy under the attachment, this action was brought. The justice before whom the action was tried held that the sum of $52,000, so deposited by Oakey in the Nassau Bank, was really deposited for the use and benefit of Mumford, and belonged to Mumford ; and that the drawing of the checks and getting them certified by Oakey, was a contrivance on the part of Mumford and Oakey to screen the money from the creditors of Mumford, and to prevent or defeat the levy of an attachment or execution thereon. The court also found that the levy was duly made, and that the plaintiffs were entitled to the satisfaction of their judgment out of the fund.

No one of the defendants appealed except Speyers, who claimed as assignee of Mumford, under an assignment executed after the levy.

*D. D. Field,* for the plaintiffs. I. The appeal is from a part only of the judgment ; that is to say, from that which declares the money in the bank to be the property of Mumford, and from that which declares that the money thus belonging to Mumford was bound by the levy under the

Greenleaf *v.* Mumford.

attachment, and has been properly subjected to the judgment and execution. Two questions only are thus raised, one a question of fact, and the other a question of law.

II. The question of fact is not open to the defendant Speyers upon this appeal, because the findings dispose of it, and the evidence not being given, it cannot be disturbed.

III. There is another reason why this question cannot be raised by the defendant Speyers, and that is, that if the money in bank was not the property of Mumford, the assignment made by that person to Speyers would not convey it, and the latter has no interest in the litigation, which will support an appeal.

IV. It was suggested on the argument, for the first time, that there is a further question, that is to say, whether this action can be brought by the present plaintiffs, without joining the sheriff with them. The late general term decided that this question could not be raised without an amendment of the case, to show that it was made at the trial. The defendant thereupon moved for leave to apply at special term for such an amendment, and for a re-argument at the general term. Leave was granted, and a re-argument ordered. But on the motion being made at the special term, such cause was shown against it that the amendment was refused. This, it was supposed would put a stop to the re-argument. But the defendant still thinking himself entitled to re-argue the case, the plaintiff submits two propositions :

*First.* That the question of the non-joinder of the sheriff cannot now be raised, because, 1. The general term has so held ; and 2. If it had not been so decided before, it should be so decided now. The omission to join the sheriff, if that was necessary, should be regarded as purely a slip. The plaintiffs had a right, all admit, to sue in this manner, alone, upon indemnifying the sheriff. Who knows, that the sheriff has not been indemnified ? But, if not, he could

waive the indemnity. Nobody is interested in that but himself, and he might request the plaintiff to sue. If the objection had been taken at the time, it might have been remedied by an amendment of the complaint.

*Second.* The sheriff was not a necessary party. The objection comes from confounding two things quite distinct. Section 238 of the Code refers only to the actions which are authorized by the following portions of section 232: "The sheriff  *  *  *  *  shall, subject to the direction of the court or judge, collect and receive into his possession all debts, credits and effects of the defendant. The sheriff may also take such legal proceedings, either in his own name or in the name of such defendant as may be necessary for that purpose, and discontine the same at such times and on such terms as the court or judge may direct;" and by the 4th subdivision of section 237, as follows: "Until the judgment against the defendant shall be paid, the sheriff may proceed to collect the notes and other evidences of debt, and the debts that may have been seized or attached," &c. The present action is not one of those which rest for their authority upon these sections. The right to bring it exists independent of them, and would have existed if they had never been passed. This right rests upon that general principle of equity jurisprudence which enables a plaintiff to remove out of the way of an officer of the law executing process in his favor, impediments fraudulently interposed. In the present case, if the money had been deposited in the name of Mumford, this action would have been unnecessary; but its deposit in Oakey's name, and his certified checks which he might indorse and thus defeat the levy, made it necessary, *first*, to enjoin the indorsement; *second*, to compel the cancellation of the checks; and *third*, to have the fund declared to be the property of Mumford. These were the primary objects of the action, and when jurisdiction was thus obtained, it was proper, according to established principles, for the court to go on and do complete justice. The

Greenleaf *v.* Mumford.

levying of an attachment upon things in action, does not of itself vest the title to them in the sheriff, and therefore an express provision of law was necessary to enable the sheriff to reduce them into possession ; otherwise he would have had no title to sue. The plaintiff, however, has, upon general principles, a right, not to sue directly for the recovery of the debt, but to invoke the equitable interference of the court to remove impediments out of the way of the sheriff's perfecting his levy. The present action is in aid of the levy, and to enable the sheriff to perfect it ; an action by the sheriff would lie to collect the thing levied after the levy had become perfect. The cases support this view. (*See Mills* v. *Block,* 30 *Barb.* 550 ; *Rinchey* v. *Stryker,* 26 *How.* 75 ; *Falconer* v. *Freeman,* 4 *Sandf. Ch.* 565.) In *Kelly* v. *Lane,* (42 *Barb.* 602,) the court in this district, at general term, affirmed the right of the sheriff to bring suit for the purpose of breaking down a fraudulent barrier which prevented him from collecting the effects of a debtor in an attachment, and the reason given was that the true and liberal construction of the Code required them "to hold that debts, credits or effects held under a fraudulent title from a debtor in an attachment, are to be considered as the debts, credits, or effects of the debtor, when the question is between the party holding under such fraudulent title and an *attaching creditor, or the sheriff, who represents such creditor,*" (*p.* 609,) thus declaring, in effect, that the right of the sheriff to sue was *because he represented the creditor,* and that the right of the creditor was a common law right to remove an impediment to the enforcement of his lien, whenever the statute gave such lien. In *Frost* v. *Mott,* (34 *N. Y. Rep.* 255,) the Court of Appeals re-affirmed the doctrine of *Rinchey* v. *Stryker.* In *Lawrence* v. *The Bank of the Republic,* (35 *N. Y. Rep.* 320,) it was decided that a *sheriff cannot* maintain a suit to reach the proceeds of assigned property for the purpose of applying it to an attachment in his hands. " The sheriff," the court says,

" can only bring such action as the defendant himself could bring, but for the assignment. ❋ ❋ ❋ He cannot bring a suit to subject property to an attachment which could not be otherwise attached." (p. 322.)

· Charles A. Rapallo, for the appellant. I. The contest in this action, is in fact and in substance, between the mass of the creditors of P. R. Mumford, who claim a pro rata distribution of his property, and the plaintiffs, who claim that, by virtue of the statutory attachment proceedings instituted by them against Mumford, they have gained a preference over the other creditors, and entitled themselves to payment in full. The same fraud which Mumford practiced upon the plaintiffs, in contracting the debt to them, was practiced by him upon the other creditors, and there is no circumstance in the case, independent of the attachment, which could give the plaintiffs the least color for claiming a preference. The claim of the plaintiffs is therefore strictissimi juris. It has no equity to commend it to the favorable consideration of the court; but, on the contrary, should be looked upon with disfavor, because it violates one of the cardinal principles of equity jurisprudence, viz : that " Equality is equity." (See 2 John. Ch. 577, 579 ; Norton v. Coons, 6 N. Y. Rep. 40 ; McClelland v. Remsen, 36 Barb. 626.)

II. Although courts of equity are constrained to give effect to preferences legally obtained, yet they do so with reluctance, and always hold parties claiming such preferences to a strict compliance with all the conditions necessary to the establishment of their legal right. Departures from the prescribed course of procedure, which might ordinarily be considered unimportant, are seized upon by courts of equity as fatal defects, when by so doing they can defeat the unequal distribution of an insolvent estate. (Bank of Rochester v. Emerson, 10 Paige, 359.)

III. The right of the plaintiffs in this case depends upon their showing a regular levy under their attachment, and

that they thereby obtained a lien upon the fund in question, before the delivery of the assignment to the appellant. Assuming that the plaintiffs could, by attachment, obtain such a lien, the plaintiffs should be held to a strict compliance with the formalities prescribed by the statute, and the omission of any of its requirements is fatal to their claim. (*Orser* v. *Grossman*, 11 *How. Pr.* 520.)

IV. The attachment was obtained under the provisions of the Code, which differ materially, both in respect to the course of procedure and in respect to the rights of the attaching creditor, from the provisions of the former statutes. The requirements of the Code as to the manner of levying the attachment must therefore have been complied with, to render the levy effectual. But they were not complied with.

V. The property sought to be attached was the proceeds of checks which Mumford had given to Oakey. Oakey had collected the checks through the Nassau Bank, and the proceeds had been mingled with the funds of the bank, so that they could not be specifically levied upon. They had been passed to the credit of Oakey in his general account, and had assumed the form of a debt from the bank to Oakey. The bank had afterwards, and before any levy, delivered to Oakey negotiable certified checks to his own order for an equal amount, and was not bound to pay any one except on presentation of these checks and their indorsement by Oakey. If these proceeds could be levied upon by the sheriff, (which is denied,) the case falls within the provisions of section 235 of the Code, which requires in cases where the property is is not capable of manual delivery, a certified copy of the warrant to be delivered to the corporation or individual holding the property of the debtor, or indebted to him, with a notice *showing the property levied upon.* (*See Brownell* v. *Carnley*, 3 *Duer*, 9–13.) The service on the bank of the general notice that all the property of Mumford was levied upon did not show that the bank account of Oakey was intended to be reached. To hold such a notice to be a good levy on money

standing to the credit of Oakey, would be in direct violation of the provisions of the Code.

VI. But no service of the attachment upon the bank could reach this fund. The bank was *not* the debtor of Mumford, but was the debtor of Oakey. The money had become the property of the bank.

VII. The fact that Oakey's private box which contained the certified checks drawn by him was in the vault of the bank, did not constitute the bank the holder of the checks. The box was Oakey's and its contents were in his sole and exclusive possession and control. The bank had no control over the box or the checks, and could not lawfully have opened Oakey's box and delivered the checks to the sheriff, even if the warrant had been properly served; nor were the checks available without Oakey's indorsement. The service of the warrant on the bank was, therefore, no levy on the checks. It had no more effect than a service on the landlord of the bank would have had.

VIII. By the deposit in the bank to the credit of Oakey, of the proceeds of the checks originally transferred by Mumford to Oakey, and such proceeds being mingled with the funds of the bank, they had lost their identity as property, and had become a debt of the bank to Oakey. By the subsequent delivery to Oakey of the certification of his checks, this general debt had become a specific obligation of the bank to whomsoever might be the holder of the checks. The money had become the property of the bank. The checks drawn by Oakey and certified by the Nassau Bank might, while in the hands of Oakey, have been reached by a proper proceeding against him. But before any such proceeding was had, the title thereto, and the right to obtain them for the benefit of the creditors, passed to the appellant as assignee, for the benefit of all the creditors. (*Laws of* 1858, *ch.* 314.)

IX. If before any sufficient levy upon the checks, they or the title to them were transferred to a third party—even an assignee for the benefit of creditors—such transferee acquired

the best right to claim payment from the bank, and the bank would have been protected in paying the money to the holder of the checks.

X. The right of Mumford's creditors to these checks, and Mumford's claim, if any, against Oakey, passed to the assignee (the appellant) by virtue of the assignment, before any service of the attachment on Oakey, who was the holder of the checks, and even before any service on Mumford. The transaction between Mumford and Oakey, having been adjudged to be a fraudulent transfer, the appellant, as assignee for the benefit of creditors, had the right under chapter 314, section 1, of Laws of 1865, to treat it as void, and claim any property of Mumford in the hands either of Oakey or the Nassau Bank.

XI. If, after the service of the notice, the bank had paid Oakey's checks to him or his assignee, such payment would have been valid, and the bank could not have been held liable to pay a second time. This is one good test of the sufficiency of the levy ; for if the attachment was not served on the bank in such a manner as to stop the fund, and make the bank liable for paying it to any one but the sheriff, it was not levied at all, and could not prevent his property passing to his assignee, no service having been made before the assignment, except the service on the bank.

XII. Even if the attachment had been properly served on the bank, this action could not be maintained. 1. The complaint does not state facts sufficient to constitute a cause of action. This objection can be taken at any stage of the action, and is not waived, though not taken by answer or demurrer. (*Code*, § 148.) It may be taken on appeal to the general term, though not taken at the trial. (*Cole* v. *Blunt*, 2 *Bosw*. 125.) 2. The exception to the conclusion that the plaintiff is entitled to the judgment specified in the fifth conclusion of law is well taken. 3. The exception to the conclusion that the money deposited by Oakey in the Nassau Bank was bound by the levy made under the attachment, is well taken. 4. The exception to the first conclusion, that

the serving of the warrant on the bank constituted a levy on the fund in controversy, is well taken. 5. The exception to the fourth conclusion, that the service on the bank entitled the plaintiff to a preference over the appellant as assignee, is well taken. The facts being conceded, if either of these exceptions is well taken, the appellant is entitled to judgment.

XIII. An action to subject property of a debtor to an attachment, can in no case be maintained by the creditor. In a proper case, the sheriff may bring such an action, but never the creditor. (*Mechanics and Traders' Bank* v. *Dakin*, 28 *How. Pr.* 510.) If this were the only objection, it would be fatal to the action. It appears upon the face of the complaint that *the plaintiffs* have no cause of action. It is also raised by the exception to the conclusion, that *the plaintiffs* are entitled to judgment as therein declared. It is not necessary, for the purpose of raising the objection that *the plaintiffs* cannot maintain the action, to show that any other party can.

XIV. But the objection rests upon a still deeper foundation. Neither the plaintiffs nor the sheriff could maintain this action. The plaintiffs could not maintain it to enforce the attachment ; neither could they maintain it as a creditor's bill, for at the time of the commencement of this action they had not even obtained judgment against Mumford. This action was commenced August 23, 1865. Judgment was not recovered against Mumford until September 4, 1865. It is now finally settled that a creditor cannot resort to a court of equity until after his ordinary remedies have been exhausted by the return of an execution unsatisfied. (*Dunlevy* v. *Tallmadge*, 32 *N. Y. Rep.* 457, 460.) The sheriff could not maintain the action, because he could not, under the attachment, obtain any lien upon the funds in the Nassau Bank.

XV. An attachment does not reach funds so situated ; it cannot perform the office of a creditor's bill. The dissenting opinion of Justice SUTHERLAND to this effect, in the case of *Kelly* v. *Lane*, (42 *Barb.* 610,) is established to be the law by the decision of the Court of Appeals in the case of *Law-*

Greenleaf *v.* Mumford.

*rence* v. *The Bank of the Republic,* (35 *N. Y. Rep.* 320,) and on the authority of that case the complaint in *Kelly* v. *Lane* has been dismissed.

The cases are similar. Mumford, with intent to defraud his creditors, placed . in the hands of Oakey checks for $53,000. The court has adjudged that "the said transfer was clandestine, and made with intent to defraud the creditors of Mumford." Oakey, on his own responsibility, collected these checks through the Nassau Bank. The identical property he had received from Mumford was then gone. The proceeds of the checks were placed to the credit of Oakey in the Nassau Bank, and Oakey drew his own checks against this credit, had them certified, and kept them. Whether this transaction created an indebtedness of Oakey to Mumford, which might have been attached by the service of the warrant on Oakey, it is not necessary to inquire, because there was no service on Oakey. But it is clear that the funds thus standing to the credit of Oakey in the Nassau Bank, could not be reached by the attachment, even though they were the proceeds of the securities fraudulently transferred to Oakey by Mumford. It was expressly decided by the Court of Appeals in the case of the Bank of the Republic, that the service of an ·attachment upon a bank with which such a fund was deposited created no lien upon the fund. It was competent for a court of equity to subject Oakey's checks, or the funds in bank, to the claims of Mumford's creditors. But this could only be done, 1st. At the instance of an assignee for the benefit of creditors, under the provisions of chapter 314 of the Laws of 1848. 2d. In the absence of such an assignment, at the instance of a creditor, having a judgment and execution returned unsatisfied. (*Dunlevy* v. *Tallmadge,* 32 *N. Y. Rep.* 457–460.) The judgment creditor gets a lien only from the time of the filing of his bill. In the present case, before the filing of the bill, and even before the recovery of the plaintiff's judgment, the right to recover those assets for the benefit of all the credi-

tors had passed to the appellant by a valid assignment, and the provisions of the act of 1848. And the assignee claims in his answer, as affirmative relief, to which he is clearly entitled, that the fund be paid to him for distribution.

XVI. The case of *Rinchey* v. *Stryker*, (26 *How.* 75,) upon which his honor Justice CLERKE relies as the authority for maintaining this action, does not apply. That case did not hold that a creditor's bill could be filed by an attaching creditor before execution to obtain the application to his claim of the proceeds of property of the debtor. It only decided that an attaching creditor had such a lien upon goods of the debtor actually seized as would authorize the sheriff, in his behalf, to defend his possession of such goods as against a fraudulent assignee of the debtor.

XVII. On the facts found, the court should have adjudged that the plaintiffs' action could not be maintained, and that the whole of the fund belonged to the appellant, as trustee for the creditors, and should have made the proper order for the repayment of the money drawn out of court by the plaintiffs under the provisional order of September 19, 1865. This affirmative relief the appellant was entitled to under the prayer of his answer. When all the facts are found, the general term, on appeal, can render final judgment disposing of the whole case, though adverse to that rendered at special term. (*Marquat* v. *Marquat*, 2 *Kern.* 340.)

SUTHERLAND, J. The exceptions to the conclusions of law, that the service of the warrant of attachment on the Nassau Bank constituted a levy on the fund in question; that the money deposited by Oakey in the Nassau Bank was bound by the levy made under the attachment; and that the plaintiffs were entitled to the judgment specified in the fifth conclusion of law, were all well taken. These conclusions of law were all plainly erroneous, for the reason that they all assume that the sum of $53,000, deposited by Oakey in the Nassau Bank, for which the bank had given him credit, and

Greenleaf *v.* Mumford.

for which the bank had certified checks drawn by Oakey against the fund, was capable of being attached as a debt due or owing from or by the bank to the defendant Mumford. In other words, these conclusions of law and the judgment quietly assume against the defendant Speyers the main point in the case; and erroneously assume it; for the facts found show that there was no debt due or owing from the bank to Mumford on account of the $53,000, or its deposit, when the attachment is alleged to have been served. The main question in this case is not as to the regularity or sufficiency of the service, or attempted service, of the attachment; but the main question is, do the facts found show that there was any debt, fund, or thing which was or could be attached or levied on? Plainly they do not.

The transaction between Mumford and Oakey as to the $53,000, however fraudulent and void as to the plaintiffs and other creditors of Mumford, was valid as between Mumford and Oakey; and whatever the right of the plaintiffs and other creditors, with judgments and executions returned *nulla bona*, to have the transaction declared fraudulent and void, and reach the fund in equity, the plaintiffs could not reach the fund with their attachment in their action against Mumford for their debt. The plaintiffs could only attach the fund as a debt of the bank's to Mumford; but the facts found in this case show that the debt arising from the deposit in the bank by Oakey and the credit given by the bank to Oakey, was a debt of the bank's to Oakey and not a debt of the bank's to Mumford. To say, that the fund deposited in the bank by Oakey, and for which the bank had given him credit, and on account of which the bank had certified the checks of Oakey drawn against the same, could be reached by attachment in the action of the plaintiffs against Mumford for their debt; or to say that the fund was attached in that action, because the court below found in this action that the transaction between Mumford and Oakey was fraudulent and void, as to the plaintiffs and other creditors of Mumford;

and that the fund so deposited by Oakey in equity belonged to the creditors of Mumford ; is to say that you can give the finding and judgment in this action, (commenced before the plaintiffs had got a judgment for their debt,) on the question of fraud, an *ex post facto* operation, and that you can by this *ex post facto* operation, support the attachment proceedings in the first action, and the lien and preference claimed by the plaintiffs to have been acquired under or by the attachment proceedings in the first action.

Why, the very claim of the counsel for the plaintiffs, that this action is an action to subject the fund in question to the attachment in the first action, involves the admission that it was not and could not be attached in the first action, and that the plaintiffs did not and could not, by the attachment proceedings in the first action, get any lien on the fund, and that they did not, and could not, by their attachment proceedings in the first action, obtain any right or preference to have their debt paid in full out of the fund. And a claim that the fund was attached in the first action because the court below found, in this action, that the transaction between Mumford and Oakey was fraudulent and void as to Mumford's creditors, involves the same admission, that the fund was not attachable in the first action.

There is really no such thing as an action, either by the creditor or sheriff, to subject chattels or debts to an attachment issued under the Code. It is the Code which subjects property to attachment. Whoever heard, until recently, of an action either by a sheriff or creditor in aid of the Code, to subject property to attachment—to make that attachable under the Code which was not attachable under the Code.

In the case of *Kelly, sheriff,* v. *Lane and others,* I dismissed the complaint at special term, on the ground that the sheriff could not maintain such an action. There was an appeal, and it was reversed by the general term. For a more full discussion of the question, I refer to my dissenting opinion in that case, at general term. (*See Kelly* v. *Lane,*

42 *Barb.* 610.)   I think I may say that the views expressed in my dissenting opinion in *Kelly* v. *Lane*, were fully and unequivocally sustained by the Court of Appeals in *Lawrence* v. *The Bank of the Republic*, (35 *N. Y. Rep.* 320.) True, perhaps, I did not say in *Kelly* v. *Lane*, either at special or general term, that a creditor could not bring such an action, for I had no occasion to say it, but my reasoning applied equally to such an action by a creditor.

Judge MORGAN, in his opinion in the Court of Appeals, in *Lawrence* v. *The Bank of the Republic*, does not say in words that a creditor could not maintain such an action ; but as the questions in the case arose on the defendant's answer setting up the attachment proceedings by the defendant, the question whether either the defendant or the sheriff could have maintained such an action, was before the court. It does not appear that there had been a suggestion by counsel, if the sheriff could not have maintained such an action, that the defendant could.   It was natural, therefore, that the judge should in words limit his opinion to the question which had been discussed, whether the sheriff could have maintained such an action.   I venture to say that the learned judge and the counsel assumed if the sheriff could not have maintained such an action, the defendant could not.

I dismissed the complaint in *The Mechanics and Traders' Bank* v. *Dakin and others*, at special term, on the ground, (*see* 28 *How. Pr.* 510, 511,) that the plaintiff, as a judgment creditor, with an execution out and not returned *nulla bona*, could not maintain the action, the bond and mortgage sought to be reached and applied to the payment of the judgment being choses in action, or equitable assets.   There had been an attachment issued in the action in which the judgment was obtained, under which attachment it was claimed that the bond and mortgage had been attached as a debt due or owing from the defendant Miller to the defendant Dakin.   I dismissed the complaint, irrespective of the question whether the attachment proceedings did or could aid the plaintiff in

maintaining the action. I assumed that the attachment proceedings did not enable the plaintiff to maintain the action. There was an appeal; and it seems, (see 33 *How. Pr.* 316,) that the general term, instead of passing upon the point upon which the complaint was dismissed at special term, affirmed the judgment of dismissal on the ground, substantially, that though the sheriff might have maintained an action to subject the bond and mortgage to the attachment, notwithstanding their formal and alleged fraudulent assignment by Dakin to the defendant Jewell *before the attachment proceedings ;* yet that the plaintiff, the creditor, could not.

*Lawrence* v. *The Bank of the Republic*, was decided by the Court of Appeals, at the March term, 1866. *The Mechanics and Traders' Bank* v. *Dakin and others*, was heard by the general term, at the January general term, 1867.

It is certainly singular that Justice LEONARD, who wrote the elaborate opinion of the general term in the last mentioned case, should be reported as having concurred in Judge MORGAN's opinion in the Court of Appeals, in *Lawrence* v. *The Bank of the Republic*.

If the moneys deposited by Oakey in the Nassau Bank were regularly and properly attached, in the action by the plaintiffs to recover a judgment for their debt, either as the moneys of Mumford or as a debt of the bank's to him, there was no necessity or occasion for this action; and if they were not so attached in the first action, this action could not be maintained in aid of the attachment proceedings, or to declare or create a lien on the fund, when none was acquired by the attachment proceedings.

This action was commenced before the plaintiffs had obtained judgment in their action in which the attachment was issued, and after the assignment by Mumford to the defendant Speyers, for the benefit of all of Mumford's creditors, equally and without preferences.

The purpose of this action was to have the transfer of the

$53,000 by Mumford to Oakey, and the deposit of it by Oakey to his own credit in the Nassau Bank, judicially declared fraudulent and void as to the plaintiffs, as attachment creditors of Mumford ; and to have it further judicially declared, that the moneys had been attached in the action in which the attachment had been issued, as the moneys of Mumford, so that the plaintiffs might obtain the further judicial declaration, and a judgment, in this action, that they should be paid their debt in full out of these moneys, instead of taking their share under the assignment with other creditors, whose debts were equally meritorious with their own;

Now it appears to me, in view of the maxim, "that equality is equity," and in view of the circumstance that the very institution of this action must be regarded as a confession that the moneys had not been attached, it must have required great courage, or a great confusion of ideas, and a gross misapplication of analogies, to bring the action.

Upon what rests the power of the court below to find, as was found in this case, that the service of the attachment was a good and valid service, and that the money in question was bound by the levy under the attachment, and " that the same has been properly subjected to the execution issued on the judgment" entered in the attachment action ? The attachment proceeding was a statutory proceeding under the Code and regulated by the Code. Upon what rests the power of a court of equity to interfere with it—to declare moneys to have been attached which had not been attached— a levy to have been made, and a lien acquired, when in fact there was neither a levy nor a lien—to declare that to have been done and that to have existed, which never was done and never did exist—to declare a fiction to be a fact ?

There are fictions of law, but the maxim is "*in fictione juris semper subsistit æquitas.*"

"Equality is equity," and we are not called upon in this case to strain a point to initiate a principle, or to create a

precedent, that the plaintiffs may be paid their debt in full at the expense of other creditors equally meritorious. My excuse for this rather elaborate opinion on a question which I deem so plain, must rest on the cases which have been referred to, and on the fact that I am writing this opinion upon a reargument ordered in this case, after judgment of affirmance by the general term.

As the answer of the defendant Speyers, the assignee asks for affirmative relief, and as the necessary parties appear to be before the court, and as there is not a doubt that the conclusion of the court below, that the transaction between Mumford and Oakey, and the deposit of the $53,000 by Oakey in his own name, was fraudulent and void as to the plaintiffs and other creditors, I think we can and should declare and adjudge, that the defendant Speyers, as asssignee, was and is entitled to the whole fund in question, which it seems was deposited in the New York Life Insurance and Trust Company, by order of the court, to be distributed under and according to the assignment, and that it be paid over to him for such distribution, leaving him to take such action on or as to the bond, which was given for the repayment of so much of the fund, with interest, costs and damages, as was paid to the sheriff by order of the court in satisfaction of the plaintiffs' execution, as he shall be advised to take ; and I think that the judgment appealed from should be reversed, and the plaintiffs' complaint dismissed, with costs.

INGRAHAM, J. concurred.

GEORGE G. BARNARD, P. J. (dissenting.) This appeal has been once heard and decided at a general term of this court. The judgment was affirmed. This court, after full argument, overruled all objections made by the appellants to the part of the judgment appealed from, but ordered a re-argument, so as to permit the appellant to apply at special term

Greenleaf *v.* Mumford.

and have inserted in the case an objection that the sheriff should have been one of the plaintiffs, which was claimed to have been made on the trial. The special term refused to insert as a fact that such objection had been taken, upon the trial; so that the same record is again presented for argument. There being no change of facts, and no claim that any fact was overlooked by this court on the former argument, or that any authority was overlooked, no ground is presented for a further consideration of the question once passed upon in the same court. Should the sheriff have been either sole plaintiff or joined with the present plaintiffs? I think not. The plaintiffs, by the attachment, acquired a specific lien upon the property attached. There had been created a fraudulent title between Mumford's property and his creditors. Before the sheriff could collect the particular property levied on as sheriff, under the Code, it was necessary to remove this fraudulent title. This could only be done by an action in equity. The parties to such an action are the creditors who have attached and the parties committing the fraud and claiming to hold under the fraudulent title. The issuing and return of an execution has no possible bearing on such an action. The sheriff is not a party to it.

The judgment should be affirmed, with costs.

Judgment reversed.

[New York General Term, January 6, 1868. *Geo. G. Barnard, Sutherland* and *Ingraham,* Justices.]