May Term,
1835.

HANKINS
v.
INGOLS.

---

## HANKINS and Another *v.* INGOLS.

The claimant of goods, taken in execution against another person, filed a claim to the goods, stating them to be his and that his claim was just and legal, and then made an affidavit that the claim was true in substance and matter of fact. *Held*, that the affidavit was sufficient.

The execution-defendant, on a trial of the right of property between the claimant and the execution-plaintiff, is a competent witness for the claimant.

Whether goods mortgaged to secure a debt, but which are suffered to remain with the mortgagor after the time limited for payment, and are used by him as his own, can be taken on the execution of a third person against the mortgagor,— depends on the question whether the mortgage was executed to defraud the mortgagor's creditors, which is a question for the determination of a jury.

The possession and use of the goods in such case, are *prima facie* evidence of fraud; but the presumption of fraud thus raised may be rebutted by testimony showing the transaction to be *bona fide*.

APPEAL from the *Fayette* Circuit Court.

BLACKFORD, J.—An execution in favour of *Hankins* and *Mount* against *Weaver*, was levied on a spinning machine in *Weaver's* possession. *Ingols* filed with the justice, who had issued the execution, a claim to the machine as his property. He also filed an affidavit, stating that "the above claim was true in substance and matter of fact, to the best of his belief."

*Thursday*,
*May* 28.

The triors, under the statute of 1831, found the property to be *Weaver's* and subject to the execution. The justice entered a judgment on the verdict, and stated in his judgment that the property was valued, by agreement of the parties, at 200 dollars. *Ingols* appealed to the Circuit Court.

A bill of exceptions shows, that, on the trial in the Circuit Court, the claimant introduced, in support of his claim, a mortgage as follows:—

"This indenture, made the 25th day of *September*, 1833, between *Lewis S. Ingols*, of the county of *Franklin* and state of *Indiana*, of the one part, and *Philip Weaver*, of the county of *Fayette* and state aforesaid, of the other part, witnesseth, that the said *Philip Weaver*, for and in consideration of the sum of 200 dollars, in hand well and truly paid by the said *Lewis S. Ingols*, the receipt whereof is hereby acknowledged, hath bargained, sold, released, granted, and confirmed, and by these presents doth grant, &c. unto the said *Lewis S. Ingols* the following property, towit, one throstle and double carding machine, one drawing frame, and one roping frame, a reel and winding block, and some bobbins. To have and to hold the said goods, and every of them, by these presents bargained and sold, &c. unto the said *Lewis S. Ingols*, his heirs, executors, administrators, and assigns forever. Provided always, and it is hereby expressly agreed, that if the said *Philip Weaver*, his heirs, &c. shall well and truly pay unto the said *Lewis S. Ingols*, or his certain attorney, executors, &c. 100 dollars, one day after date, and 100 dollars 30 days from the above date, then these presents and every clause and condition of them to be void, otherwise to be and remain in full force and effect. And it is further agreed, that the said *Philip Weaver* shall retain possession of the above goods, until default is made in the conditions above, and no longer.           •

In presence of                 *Philip Weaver*, [Seal.]
A. N. Hammond.                  Lewis S. Ingols, [Seal.]"

There is the following endorsement on the mortgage: "Received and recorded *January* 21st, 1834, among the deed records of *Fayette* county, in Book F., pages 455, 456.

                                    John Tate, R. F. C."

The claimant then offered *Weaver*, the mortgagor and execution-defendant, as a witness to prove "that the mortgage

was *bona fide* executed; and that the whole transaction was had between the witness and claimant in good faith." The witness was objected to as being interested, but the objection was overruled.

The bill of exceptions further states, that, after the evidence had gone to the jury on both sides, the defendants asked the Court to give the jury the following charge:—"That if they believed that the mortgage, under which the plaintiff claimed the property in dispute, was executed in the county of *Franklin* at the day of its date, and that *Weaver*, the mortgagor and execution-defendant, brought the property to *Fayette* county more than a year ago, with the knowledge and assent of *Ingols*, used and occupied it as his own ever since up to the levy on the 1st of *January* last, made valuable additions and improvements upon it to half its original value, exercised general acts of ownership over it, and obtained the credit for the amount of the execution from *Hankins* and *Mount*, upon the faith of such possession and acts of ownership, they the said defendants having no knowledge of the said mortgage, or the claim of the plaintiff to said property, the mortgage not having been recorded, nor any other notice of it having been given to the defendants,—the property is subject to the debts of the defendants, created under such circumstances; and that if the jury believe that such are the facts of this case from the evidence, they must find for the defendants, &c." Which charge the Court refused to give in terms, but they said to the jury: "That such a state of facts is strong evidence of fraud, and, unrebutted, the jury should find for the defendants. But that, notwithstanding such facts, if it should have appeared to their satisfaction, that the property claimed named in said mortgage was purchased by said *Weaver* from said *Ingols*, the claimant, and that delivery of the same was made under such purchase to *Weaver*, and that the mortgage was executed in good faith, to secure the payment of the purchase-money in favour of said *Ingols* by said *Weaver*, the execution-defendant; and if the purchase-money is still unpaid;—the jury should find for the claimant."

The jury gave a verdict for the claimant, and the Court rendered a judgment thereon in his favour.

The first objection made to the proceedings is, that the affidavit is not sufficient. The statute requires an affidavit, that

the claim is just and true, in substance and matter of fact. R. C. 1831, p. 237. The claim is, in this case, that *Ingols* is the true and legal owner of the property, and that his claim thereto is just and legal. The affidavit states, that "the above claim is true in substance and matter of fact." We think that the affidavit is, substantially, in conformity with the statute (1).

The second objection is, that the value of the property should have been found by the jury. The statute requires the value of the property to be found by the Court or jury, (as the case may be,) in order to ascertain whether a writ of error will lie in the case. Rev. C. 1831, p. 320. Here the Court informs us, that the defendants agreed that the property was worth 200 dollars. That estops them now from any objection to the value.

The third objection is as to *Weaver's* admission as a witness for the claimant, to prove the validity of the mortgage. The witness does not appear to us to have had any direct interest in supporting the mortgage. In establishing the mortgage, the witness would rescue the property from the defendant's execution, but the property then must go to the claimant, and not to the witness. Even the witness' right to the temporary possession of the machine, as mentioned in the mortgage, had long before ceased to exist by the terms of the contract. The feelings of the witness may have been favourable to the claimant, but objections on that ground go only to the credibility of witnesses, and not to their competency. In a late case in *New-York*, very similar to the one before us, the execution-defendant was examined as a witness on the part of the claimant, without objection. *Hall* v. *Tuttle*, 8 Wend. 376.

The fourth objection is,—the refusal of the Court to give the instructions asked, and the giving of the instructions objected to.

The circumstances enumerated in the charge asked for, do not, *per se*, make the conveyance of the machine to the claimant fraudulent and void. The Court instructed the jury, "That such a state of facts was strong evidence of fraud, and, unrebutted, the jury should find for the defendants." This was all that the Court could say. Whether the mortgage was made with an intent to defraud the defendants, as the creditors of the mortgagor, was the question to be tried. It was a question of fact, which the parties had submitted for trial to a jury.

The claimant had a right to meet the evidence of the defendants by other evidence of his own, and to show that, notwithstanding the facts proved on the other side, the mortgage was *bona fide*, and the mortgagee free from any imputation of fraud. Let the circumstances of *Weaver's* taking the machine into another county, his making improvements on it, using it as his own, and obtaining credit from the defendants in consequence of these acts, raise ever so strong a presumption against the fairness of the mortgage, it is, after all, no more than a presumption, and the facts raising it must be subject to be rebutted and explained. Besides, it is not pretended that any of these acts, except the removal of the machine, were done with the knowledge or consent of the claimant.

The Court instructed the jury, in substance, as follows: That if the facts, as already mentioned, stated in the charge which was refused, were unrebutted by other testimony, the jury should find for the defendants; but that, if the mortgage was *bona fide*, and the debt unpaid, they should find for the claimant. The defendants had no right to complain of these instructions, nor to ask for any other on the subject more favourable to their side of the cause.

There is a very late case in *New-York* to which we have already referred, which is the same in principle with the one now under our consideration. That case takes a full view of the question before us, and will be found to contain a statement of most of the decisions respecting it. The Chief Justice, as the result of his investigations, makes use of the following language:—"The rule, as I understand it, is, that possession by the vendor, or mortgagor after forfeiture, is *prima facie* evidence of fraud; but that such possession may be explained, and if the transaction be shown to have been upon sufficient consideration, and *bona fide*, that is, without any intent to delay, hinder, or defraud creditors or others, then the conveyance is valid, otherwise not. *Hall* v. *Tuttle*, 8 Wend. 375, 378.

There is also an important decision in *Massachusetts* of a very late date, relative to this subject. It is, indeed, nearly the same, not only in principle, but in its circumstances, with the one which we have now to determine. It is the case of an innkeeper, who had sold the furniture of his tavern to a friend, and was permitted to continue in possession. The

Court in that case, after explaining another point, says—"But the vendor was allowed to re-possess himself of the furniture, and remove it into another house, in another town and county, and to use and claim it as his own, without any contract with the vendees. This circumstance necessarily created suspicion and difficulty. Persons dealing with the vendor, who, in his own name, occupied a public house with this furniture in it, would naturally consider him the owner, and would probably trust him on that account. If the statute of *James* were in force here, there is no doubt but that the furniture would be deemed the vendor's; for he had the entire order and disposition of it. But that statute is a branch of the bankrupt system, and is not applied, even in *England*, except in cases affected by that system. There was a similar provision in the bankrupt law of the *United States*. With us," continues the Court, "the possession and use of chattels by the vendor, after a perfect transfer, is only evidence of fraud, and may be explained to be consistent with the fairness of the sale." *Shumway* v. *Rutter*, 8 Pick. 443, 447.

We are aware, that the cases of *Edwards* v. *Harben*, 2 Term Rep. 587, *Hamilton* v. *Russell*, 1 Cranch, 309, and *Sturtevant* v. *Ballard*, 9 Johns. Rep. 337, are of a different complexion from those upon which this opinion is founded. But the latest decisions in *England*, and in many of the states of our own country, are in accordance with our opinion in the present case. Chancellor *Kent*, who, in *Sturtevant* v. *Ballard*, had followed the decisions in *Edwards* v. *Harben* and *Hamilton* v. *Russell*, gives up the point, in the second edition of his Commentaries, so far as the late *English* authorities are concerned. The following is his language:—"The conclusion from the more recent *English* cases would seem to be, that though a continuance in possession by the vendor or mortgagor be *prima facie* a badge of fraud, if the chattels sold or mortgaged be transferable from hand to hand, yet the presumption of fraud arising from that circumstance, may be rebutted by explanations showing the transaction to be fair and honest, and giving a reasonable account of the retention of possession." It appears to us, from a consideration of the *American* decisions, as well as of those in *England*, that we are warranted in coming to the same conclusion.

A particular review of all the cases, both in the *United States* and in *England,* on this subject of sales of goods, as affected by fraud, may be seen in the distinguished work to which we have already referred. 2 Kent's Comm. 2d ed. p. 512 to 536 (2).

*May Term, 1835.*

We are confident that the authorities which we have now mentioned, are entirely sufficient to show that the Circuit Court, in the case before us, committed no error, either as to the instructions refused, or as to those which were given.

*Per Curiam.*—The judgment is affirmed with costs. To be certified, &c.

*O. H. Smith,* for the appellants.
*J. Ryman,* for the appellee.

(1) The affidavit of the claimant must now be in a different form. Vide Stat. 1834, p. 195.—*Humble* v. *Williams,* May term, 1838.—*Norris* v. *Detar,* Nov. term, 1838.—Rev. Stat. 1838, p. 490.

(2) Vide *Watson et al.* v. *Williams et al.* the present term, *ante,* and notes.