## BONNELL v. ALLEN.

PRACTICE.—*Law and Equity.*—*Injunction.*—Under our code, where a court may enjoin the commission of an act, it may, as a court of equity might have done before the enactment of the code, in the same action and at the same time, grant full relief by rendering judgment for damages already accrued from the commission of such act.

PLEADING.—*Demurrer.*—*Injunction.*—Where, in a suit for an injunction and for damages accrued from the commission of the act, against the future commission of which the injunction is sought, the complaint shows a

cause of action for such damages, a demurrer thereto for want of suffi-
cient facts should be overruled, though ground for an injunction be not
shown.

LANDLORD AND TENANT. — *Manure.* — *Injunction.* — Where, upon land
demised and used either for cultivation or as a dairy farm, manure has
been made during the tenancy, partly from the products of the land and
partly from food purchased by the tenant, he, in the absence of any
express stipulation on the subject, has the right to use such manure by
putting it upon the land, but has no right to remove it from the land as
his own property ; and a suit for an injunction to prevent such removal
will lie against him in favor of the lessor, who, in the same action, may
recover damages for such manure already so removed.

From the Vanderburgh Circuit Court. .

*B. Hynes,* for appellant.

*J. Pitcher* and *H. C. Pitcher,* for appellee.

BIDDLE, J.—The appellee filed a bill in equity, charging
that the appellant was occupying a certain tract of land, as
the tenant of appellee; that during such occupancy, a large
amount of manure was made upon said land, in the ordinary
way, from the consumption of the products of said land; that
the appellant had removed a part of said manure, and was
proceeding to and would remove the residue; that such
removal would be of great and irreparable damage and
injury to him, for which he would have no adequate remedy
at law; and praying that appellant be compelled to account
for the manure removed, and that judgment be rendered
against him for its value, and that he be restrained and
enjoined from removing the residue of said manure. A
prayer for a temporary injunction was added.

The lease under which the tenancy existed was made an
exhibit to the complaint. A temporary restraining order
was granted until the further order of the court.

At the ensuing term, the appellant filed a demurrer to the
complaint, which was overruled by the court, to which the
appellant excepted, and filed his answer, in which he admit-
ted the tenancy, the removal of part of the manure and the
intention of removing the residue, but says that the manure
was made from food purchased by him and fed to his own

stock; that he occupied and used the premises as a dairy, and not as an agricultural farm, and that he used thereon all the manure that was necessary or proper.   To this answer a demurrer was filed by the appellee and overruled by the court, to which the appellee excepted, and filed his reply in two paragraphs, the first a general denial, and the second alleging that the manure was made partly from the products and partly from food purchased.   The cause was submitted to the court for trial, which found for the plaintiff, that he was entitled to recover the sum of forty-five dollars, and that the injunction be made perpetual.   The appellant excepted and moved for a new trial, which was overruled, and exception was taken, and judgment was rendered in accordance with the finding.

The first error assigned is overruling the demurrer to the complaint.

It is contended by the appellant, that " when it does not appear from the allegations of the complaint that there is no remedy at law, or that it is inadequate, or that the complainant is entitled to more speedy relief than can be obtained by the ordinary process of the courts of law, an injunction will be denied.   *Mullen* v. *Jennings*, 1 Stock. 192; *Hart* v. *Marshall*, 4 Minn. 294.   When complainant's equity is based upon a claim for unliquidated damages for a substantive injury, for which ample remedy exists at law, and there is no impediment to bringing the action in a legal forum, an injunction will not be granted.   High on Inj. 21.   In fact, this rule is so well established, that it does not need to be sustained by citation of authorities or by elaboration of argument.

" The mere averment in a complaint that the party has no adequate remedy at law, and without the aid of a court of chancery he would suffer irreparable injury and damage, is not enough to authorize the interference of such a court. The facts stated in the complaint must show that the interposition of the court is necessary for the full and complete protection of the party, and that in the law courts he cannot

Bonnell *v.* Allen.

have all the redress to which he is entitled. High on Inj., sec. 35.

"The complaint in this record shows no such facts. At the most, it simply avers a state of facts which would entitle the plaintiff to his action at law for damages for the conversion of his property by the defendant to his own use. There is no averment of the insolvency of the defendant, nor of any other fact which tends to show that if the plaintiff had brought his action for the value of the manure removed, he could not have been amply compensated, nor that it would not have been the same with reference to any of the manure which might be subsequently carried off by the defendant.

"Equity will not restrain waste except where it appears that the injury sought to be restrained will be destructive of the estate of inheritance or productive of irreparable mischief, nor where it is susceptible of perfect pecuniary compensation, and for which satisfaction in damages may be had at law. High on Inj., sec. 421."

This argument is well presented, but we are not convinced that the present case is brought within its meaning. The constitution of Indiana, article 1, section 12, 1 G. & H. 29, declares, that "justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay." And the first section of our code of procedure enacts, "that the distinction between actions at law and suits in equity and the forms of all such actions and suits heretofore existing are abolished, and there shall be in this State, hereafter, but one form of action for the enforcement or protection of private rights, and the redress of private wrongs, which shall be denominated a civil action." 2 G. & H. 33. We no longer have courts of law and courts of equity. All our courts are courts of law *and* equity. We do not send a party to a court of law to establish his right in certain cases before he can resort to a court of equity. Whatever judgment he is entitled to upon the case made, he will receive, whether it be at law or in equity. The mode of procedure is the same in all civil cases. This relieves us

from much of the old technical embarrassment which originally surrounded equity in its struggles to aid law and enforce justice. Although the rule of law and the rule in equity must forever remain distinct from each other, because they are inherently different, yet they may now be administered together in the same court, in the same action, and at the same time. But there were many cases before the enactment of our code, where equity, when it once obtained jurisdiction of its own right, retained the case and granted full relief, although a portion of the redress might have been obtained in a court of law; and we think the case before us is one of that kind. The court had jurisdiction to grant the injunction, and undoubted power to grant full relief for any wrong the complainant had suffered before he made his application.

The first case we can conveniently find in support of this view is *Pulteney* v. *Shelton*, 5 Ves. 147, where an injunction was allowed against carrying away from the premises dung, soil, etc. In the case of *Onslow* v. ———, 16 Ves. 173, a similar ruling was held, enjoining the tenant from removing the crops, manure, etc. In the *United States* v. *Gear*, 3 How. U. S. 120, digging lead ore from the lead mines upon the public lands was restrained by injunction. An injunction will lie to prevent a threatened trespass upon lands, "to quarry and remove asphaltum therefrom." *More* v. *Massini*, 32 Cal. 590.

As early as 1785, Lord Byron was enjoined from interfering with the natural flow of the stream from the "pieces of water" in his park to a certain mill, without having been first sued at law. *Robinson* v. *Lord Byron*, 1 Bro. C. C. 588.

In the year 1802, Lord Chancellor ELDON said: "The law as to injunctions has changed very much; and lately they have been granted much more liberally than formerly they were. Formerly, when legal rights were set up to the extent, in which they are set up in this case, the court were very tender in granting injunctions. I remember, when in a case of trespass, unless it grew to a nuisance, an injunction

would have been refused; and even in the case of waste, if by temporary acts, from time to time merely, the subject of an action, and not bringing along with it irreparable mischief, Lord HARDWICKE thought, it was granted only as following the relief. Lord THURLOW had great difficulty as to trespass. I have a note of a remarkable case, in which the name of one of the parties was Flamang. There was a devise of close A. to a tenant for life; the lessor being landlord of an adjoining close B. The tenant dug a mine in the former close. That was waste from the privity. But when we asked an injunction against his digging in the other close, though a continuation of the working in the former close, Lord THURLOW hesitated much; but did at last grant the injunction." *Hanson* v. *Gardiner*, 7 Ves. 305.

But whether an injunction would lie in this case or not, we think the demurrer was properly overruled, because the complaint, in other respects, shows a good cause of action. *Owens* v. *Lewis*, 46 Ind. 488.

The second error complained of is overruling the motion for a new trial; and under this assignment, the only question discussed by the appellant is the ownership of the manure. He reasons as follows:

" The land in this case was not leased for the purposes of an agricultural farm, but for those of a dairy farm. The lessor ' restricts the use of said premises to and for the purpose and objects of a dairy farm, with the privilege of raising such usual and customary vegetables as may suit the tenant to raise, and also such crops as may be consistent with the aforesaid use as a dairy farm; *but the farm is not rented for the purpose of tillage or cultivation,* but for such uses only as are consistent with the general purpose of making it a dairy farm.'

" The testimony showed that the lessee occupied and used the farm solely as a dairy farm, raising nothing thereon except a little hay and corn; and that he had on the place between sixty and seventy-five head of cattle and eight horses. Also, that four-fifths of the food fed to his stock was

bought by him, and that more manure was spread upon the place than was made from the products of the farm; and that this was all that a proper and careful use of the farm, for the purpose for which it was rented, required.

"However sound may be the rule that all manure produced upon land rented for agricultural purposes belongs to and must remain upon the land, it cannot be made applicable to lands rented for other purposes."

The case of *Middlebrook* v. *Corwin*, 15 Wend. 169, is very similar to the case before us. "Middlebrook sued Corwin in a justice's court, for several loads of manure carried away from a farm occupied by one Van Cleft as tenant to Middlebrook for a year. The farm was stocked by Middlebrook with twenty milch cows, a pair of working cattle, and other cattle. The manure was sold by the tenant to the defendant, and taken from the barnyard of the farm shortly before the expiration of the tenant's term. The justice rendered judgment in favor of the plaintiff, which was reversed by the Orange Common Pleas, on *certiorari*;" but the judgment of the common pleas was reversed by the Supreme Court, and that of the justice affirmed. The only distinction between the cases is, that in the case cited, the lessor owned the cows and other cattle. The same rule is held in *Lewis* v. *Lyman*, 22 Pick. 437. In Taylor's Treatise on Landlord and Tenant, p. 423, sec. 541, the author says:

"Where a farm is taken for agricultural purposes, and there is no particular agreement as to the manure that will be made on it during the occupation of the tenant, the manure does not belong to the tenant, but to the farm, and must be used on the farm; and the tenant has no more right to remove it before the expiration of his term, or to dispose of it to others, than he has to remove or dispose of any fixture belonging to the farm." And in a note it is stated:

"This doctrine is confined to farms let for agricultural purposes; but in *Wain* v. *O'Connor*, a milk farm was held to be a farm used for agricultural purposes, so far as the

right to remove the manure was concerned." In the same section, 541, the author says:

"A different rule, however, has been laid down in South [North] Carolina, where it is held that a tenant who is about to remove, has a right, if there is no covenant or custom to the contrary, to all the manure made by him on the farm; that it is his personal property, and he may remove it as such; but this case is clearly at variance with all other American decisions on this subject." And he cites *Smithwick* v. *Ellison*, 2 Ire. 326, in support of the text.

In the case of *Lewis* v. *Jones*, 17 Pa. St. 262, it was held, that "an out-going tenant has no right to remove, from the land he occupied, manure made on the land, from its produce, during his occupancy; and the fact that he bought *some* hay and *some* grain, and fed the grain so bought to his horses, will not alter the case, so long as the manure so made is commingled with that made from the produce of the farm."

It may be held as settled that the tenant has the right to use the manure by putting it on the land of the farm which he occupies, as it accumulates, but he has no right to remove it or sell it off from the farm as his own property.

In the case of *Daniels* v. *Pond*, 21 Pick. 367, the court was of opinion, "that manure made on a farm, occupied by a tenant at will or for years, in the ordinary course of husbandry, consisting of the collections from the stable and barnyard, or of composts formed by an admixture of these with soil or other substances, is, by usage, practice and the general understanding, so attached to, and connected with, the realty, that, in the absence of any express stipulation on the subject, an outgoing tenant has no right to remove the manure thus collected, or sell it to be removed, and that such removal is a tort, for which the landlord may have redress; and such sale will vest no property in the vendee." We believe this view correctly expresses the law upon the subject. A later case affirms the same rule. *Sawyer* v. *Twiss*, 6 Fost. N. H. 345.

If we are correct in this view, there is no error in the record we are considering.

The judgment is affirmed, with costs.