Field *et al. v.* Holzman *et al.*

### No. 9970.

## FIELD ET AL. *v.* HOLZMAN ET AL.

PARTIES.— *Joinder of Plaintiffs.—Conspiracy.— Fraud.— Judgment.— Injunction.—Depositions.—Notice.*—Several plaintiffs, having separate demands against H., a merchant, for goods sold, joined in one complaint to recover for their several demands. They also averred a conspiracy between H. and M. F., L. F. and S., in which it was arranged that H. should purchase goods on credit, which should afterwards be seized on execution on fictitious claims against H., fabricated by the confederates, which was accordingly done, and a large judgment entered in favor of M. F., and a levy of execution thereon made on all the goods of H., being all his property, which was about to be sold; that when it is known that a contest of the judgment is to be made, there is danger that the defendants will cause the goods to be removed beyond reach, wherefore an injunction was prayed.

*Held,* that the joinder of plaintiffs was proper.

*Held,* also, that the complaint was good against L. F. and S. to the extent of obtaining the injunction prayed.

*Held,* also, that notice to take depositions by the plaintiffs, served on L. F. and S., was sufficient.

SAME.— *Creditors.—Right to Unite in Suit for Injunction.*—Under the code creditors may unite in a suit to enjoin a debtor from fraudulently disposing of his property, although their claims are several and not in judgment.

From the Miami Circuit Court.

*B. Harrison, C. C. Hines, W. H. H. Miller, H. J. Shirk, J. Mitchell, — Rickle, — Smith, K. G. Shryock, M. L. Essick* and *G. W. Holman,* for appellants.

*J. S. Frazer, W. D. Frazer, R. P. Effinger* and *J. S. Slick,* for appellees.

ELLIOTT, J.—The appellants are members of many different mercantile firms having claims against George Holzman for goods sold him, and all united in one complaint against the appellees.

The separate claims of the different firms are set forth in the complaint, and it is alleged that Max Feder is the father-in-law of Holzman, and that Louis Feder and Max Silverburg are his brothers-in-law; that these persons entered into

a conspiracy to defraud the creditors of Holzman, and, to effect this purpose, agreed that he should buy on credit a large quantity of goods, and take them into his store at Rochester; that before the expiration of the time of payment, the goods should be seized on execution issued on fraudulent and fictitious claims, fabricated by Holzman's confederates; that, in execution of the scheme of the conspirators, Holzman executed to his father-in-law his promissory note for $6,500, and to his brothers-in-law a note for $1,500, who assigned it to the debtor's father-in-law; that these notes were without consideration and executed for the fraudulent purpose of cheating creditors; that Max Feder brought suit against Holzman, and in his original complaint claimed judgment for only $650, but, a few days before the return day, filed a substituted complaint demanding judgment on the notes heretofore mentioned, and that this course was pursued for the fraudulent purpose of concealing the true design of the defendants; that Max Feder obtained judgment for $8,200, issued execution and caused it to be levied on all of Holzman's property. Following the allegation that the sheriff is about to sell, is this averment: "And these plaintiffs aver and charge that by reason of the conspiracy existing between said defendants, there is imminent danger that as soon as it is discovered that a contest is to be made with regard to the validity of said judgment that the defendant will cause the execution to be returned, and the goods removed from said town and out of the reach of the plaintiffs." , Immediately following the statement of reasons why notice should not be given, but following in logical connection with the allegation set forth, is this averment: "And that were such notice to be served there is great danger that said defendants would avail themselves of such notice to remove such goods beyond the jurisdiction of this court." The prayer is for an injunction restraining the sale or removal of the goods, and for judgment for the amount due the plaintiffs respectively.

The allegation contained in the first quotation from the com-

plaint can not be justly regarded as a mere assignment of a reason for issuing a restraining order. It should be treated as a substantive averment of a material fact constituting part of the cause of action. It is true that the pleader uses the singular, "defendant," instead of the plural, "defendants," but we do not think that this should confine the allegation to one of the defendants to the exclusion of all the others. The frame and drift of the complaint, the statement of the facts constituting the cause of action, and the form of the concluding portion of that pleading, show very plainly that the allegation applies to all of the defendants.

It can not be doubted that one who buys goods on credit, not intending to pay for them, but having previously entered into a conspiracy to place them beyond the reach of creditors, is guilty of a gross fraud; nor can it be doubted that those who conspire with him to accomplish that purpose are also guilty of fraud. It is clear to our minds that the complaint shows fraud on the part of all of the appellees. It is also clear to us that it shows that the fraudulent acts of all the appellees unite in a common injury to the appellants. This we say because the complaint avers that the conspirators will, unless prevented by the court, place the property of the debtor beyond the reach of creditors, and this would injure the appellants by depriving them of property out of which to make their claims. The complaint at least shows a right against the brothers-in-law, Max and Louis, to an injunction restraining them from removing the property of their confederate from the jurisdiction of the court, and, as it shows a right to some relief, it is good as against a demurrer.

The property of the debtor Holzman was liable to the claims of his creditors, and in its preservation from seizure, pursuant to the scheme of the appellees, all of the creditors had an interest. The property which was seized under Max Feder's execution belonged, according to the complaint, to the debtor of all the appellants, and they had a common right to prevent its removal from the jurisdiction of the court. They

had a right to have their debtor's property subjected to the payment of their claims, and they were entitled to joint relief against the fraud sought to be perpetrated by the removal of their debtor's property.    The claims of the appellants are, it is true, separate, but their right to relief against the fraudulent scheme to keep from them their debtor's property is joint. They were, therefore, jointly interested in the relief demanded, and this entitled them to unite as plaintiffs.    R. S. 1881, section 262; *Ruffing* v. *Tilton,* 12 Ind. 259; Pom. Rem., sections 266, 267, 268; 1 Dan. Ch. 235.

It appears from the statements of the complaint that Silverburg and Louis Feder did take an active part in carrying into effect the purpose of the conspiracy, for it is charged that they received from Holzman a' fictitious note and assigned it to their father-in-law, thus enabling him to swell the amount of his claim against Holzman.    As Silverburg and Louis Feder had joined in the conspiracy, they became responsible for all that their fellow conspirator did before the consummation of the purpose for which it was formed.    His acts were, in legal contemplation, theirs, and the fraudulent acts charged against him were not at an end when this suit was brought, nor was the purpose of the conspiracy accomplished.    The right of the appellants was, therefore, not merely to relief against some of the defendants, but against all.    Having shown the formation of the conspiracy, the partial execution of its purpose, and the probability of its further execution, the appellants had a right to appeal to the courts to stay its further progress.

Where a court once rightfully acquires jurisdiction of a cause, it will retain it, although in the progress of the cause it may become necessary to grant both legal and equitable relief.    This was true of courts of chancery under the old system, where the two jurisdictions were so jealously kept separate, and there is much more reason for giving effect to the rule, where the two systems are blended, and equitable and legal jurisdiction are combined and vested in one tribunal. *Carmichael* v. *Adams,* 91 Ind. 526.    In the case before us,

Field *et al.* *v.* Holzman *et al.*

the right to an injunction invoked the chancery powers of the court, and it acquired jurisdiction to determine the entire controversy. 1 Pom. Eq. Jur., section 231.

It is no doubt true that a complaint by several plaintiffs, must show a right of action in all, or it will be bad on demurrer, assigning for cause that the complaint does not state facts sufficient to constitute a cause of action. *Nave* v. *Hadley*, 74 Ind. 155. In this case, however, there is a cause of action in each and all of the plaintiffs, and a joint right to the equitable relief prayed. *Bennett* v. *Preston*, 17 Ind. 291; *Stribling* v. *Brougher*, 79 Ind. 328.

It is argued that the appellants could not join as plaintiffs, because it does not appear that they had obtained judgments at law for their claims. There were forcible reasons under the former system for requiring creditors to obtain judgments in a court of law before appealing to a court of chancery to preserve the fund from loss, because the jurisdictions were distinct, and the modes of procedure essentially different. The purpose of the code, as shown by manifold provisions upon the subject, was to effect a sweeping change and make provision for settling all disputes in one civil action. We have cases illustrating the change. A suit may be brought to obtain judgment on a note and to set aside a fraudulent conveyance. *Love* v. *Mikals*, 11 Ind. 227; *Frank* v. *Kessler*, 30 Ind. 8; *Lindley* v. *Cross*, 31 Ind. 106. In *Wood* v. *Ostram*, 29 Ind. 177, FRAZER, C. J., says: "It is also urged that the claim against John W. Hitchcock for money advanced, and converted to his own use, was a legal claim, and that until it was reduced to judgment there could be no proceedings justified of an equitable character, to subject property held by others to its satisfaction, and hence that such equitable relief in this case was erroneous. We are of opinion that in chancery the whole case was within the jurisdiction of the court under the old practice, to grant full relief, under the facts stated in the original bill. But we need not discuss that question. The code, section 72,.

in force when the case was tried, and which governed the court as to the nature of the judgment (sec. 799), puts this case beyond all doubt, as it seems to us." Section 280, R. S. 1881, is especially broad and comprehensive, for it provides that, " When the action arises out of contract, the plaintiff may join such other matters in his complaint as may be necessary for a complete remedy and a speedy satisfaction of his judgment, although such other matters fall within some other one or more of the foregoing classes." It seems to us that this is a case to which this provision should apply. Mr. Pomeroy approves and applies to the code procedure Judge STORY'S statement: " So it is not indispensable that all the parties should have an interest in all the matters contained in the suit; it will be sufficient if each party has an interest in some matter in the suit, and they are connected with the others." Pom. Rem., section 486. The case of *Hyde* v. *Ellery*, 18 Md. 496, is very similar to the present, and it was held, that even under the old system injunction was a proper auxiliary remedy, although the creditors had not reduced their claims to judgment. But our statute so plainly contemplates a resort to injunction, prior to judgment, that we need not turn to old chancery precedents, for it provides in express terms, that injunction may issue to prevent a debtor from disposing of his property pending litigation. Under the code, a judgment may be taken for damages and an injunction awarded in the same action. *Bonnell* v. *Allen*, 53 Ind. 130; *Natoma, etc., Co.* v. *Clarkin*, 14 Cal. 544; *Moore* v. *Massini*, 32 Cal. 590.

If one creditor can maintain a suit for an injunction to prevent a debtor from fraudulently disposing of his property, there is no reason why others having the same right against the same person and the same property may not unite in one suit. It would do violence to the letter and spirit of our code to hold otherwise.

What we have said determines in favor of the appellant the question presented by the assignment of cross errors, and the questions presented by the error assigned on the ruling sus-

taining the demurrer of Louis Feder and Max Silverburg to the complaint.

The court suppressed the deposition of Max Silverburg, and in this committed error. The ground upon which the court proceeded was that notice to the defendants Silverburg and Louis Feder did not entitle the plaintiffs to take their depositions for the reason that they were not proper parties to the action. We have already decided that the court erred in holding that the complaint was insufficient as to the defendants named, and this leads to the conclusion we have stated, namely, that it was error to suppress the deposition.

We have carefully read the deposition and can not regard it as immaterial. It proves the close relationship between the alleged conspirators, the knowledge of Silverburg and Louis Feder of Holzman's and Max Feder's affairs, and details some other matters, as, for instance, the purchase of a $4,700 note from Holzman and the sale of it to Max Feder's son, which might exert some influence on the trial of the cause.

Judgment reversed.

Filed Feb. 12, 1884.