Quarl *v.* Abbett.

Filed May 26, 1885.

No. 9529.

QUARL *v.* ABBETT.

JURISDICTION.—*Constructive Notice.—Personal Judgment.*—A personal judgment is one which binds the judgment defendant personally and creates a lien upon his property generally ; such a judgment can not be rendered where the notice of the action is by publication.

SAME.—*Presumption of Notice.*—Where a judgment is collaterally attacked and the record is silent as to notice, the presumption is that notice was given, and this rule applies to cases of constructive as well as to cases of actual notice.

SAME.—*Fraudulent Transfer of Property.- Shares of Stock in Corporation.*—A judgment setting aside a fraudulent transfer of shares in the capital stock of a corporation may be rendered upon a notice by publication.

SAME.—*Non-Residents.*—The process of a court of this State may operate upon personal property within the territorial limits of the State, although the owner is a resident of another State, and can only be given constructive notice.

SAME.—*Capital Stock of Corporation.*—Shares of capital stock in a private corporation are property, and may be reached by attachment.

SAME.—*Attachment.*—The issuing of a writ of attachment, and the levying thereof on shares of the capital stock of a corporation transferred for the purpose of defrauding creditors, brings the property within the jurisdiction of the court out of which the writ issued.

SAME.—*Authority to Try Questions of Fact upon Constructive Notice.—Fraud.*—Although fraud is a question of fact, still, it may be tried, where the property sought to be reached is within the jurisdiction of the court, upon constructive notice given to a non-resident defendant.

SAME.— *What is Jurisdiction.*—The authority to hear and determine a cause is jurisdiction to try and determine all the questions involved in the controversy.

SAME.—*Attachment.*—The authority to determine whether property seized under a writ of attachment is subject to the writ includes the authority to ascertain and find the amount due the attaching creditor.

NOTICE BY PUBLICATION.— *Defective Notice.— Judgment.*—Where there is

some notice, although defective, the judgment is not void, even where the notice is by publication.

EQUITY.—*Fraudulent Transfer of Property.—Creditor not Bound to Obtain Judgment Before Suing to Set Aside Transfer.*—A creditor is not bound to put his debt in judgment before suing to set aside a transfer of property made for the purpose of defrauding him.

SAME.—*Attachment.*—A creditor may maintain a suit to set aside a fraudulent transfer of the capital stock of a corporation although an attachment has been levied thereon.

SAME.—*Lien of Writ.—Removal of Impediments to Lien.*—Where property is within the jurisdiction of the court, a suit may be maintained in conjunction with the attachment proceedings to remove impediments to the lien and to make it perfect.

From the Marion Superior Court.

*A. B. Young, H. W. Harrington* and *A. G. Howe,* for appellant.

*R. Hill* and *J. W. Nichol,* for appellee.

ELLIOTT, J.—The material facts stated in the complaint of the appellee are these: Vincent A. Quarl and Samuel Lefevre are non-residents of the State, and the latter endorsed to the appellee two promissory notes, executed by Bledsoe and others to the appellee. At the time the notes matured the makers were insolvent, and so remained. At the time of the endorsement made by him, Lefevre owed debts amounting to ten thousand dollars, and was the owner of twenty-four shares of the capital stock of a corporation known as the Indiana Chair Manufacturing Company, and to cheat and defraud his creditors, entered into a conspiracy with Quarl, and, pursuant to the fraudulent purpose, did transfer and assign all of the stock to Quarl on the books of the company, which transfer was accepted with full knowledge of the assignor's fraudulent intent. Nothing was paid by Quarl for the stock, and he appears on the books of the corporation to be the owner. The prayer is that the court will ascertain the amount due the plaintiff, adjudge the transfer of the stock to be fraudulent, and decree that the property be sold as on execution to satisfy appellee's claim. Concurrently with the complaint, the

appellee filed an affidavit reading thus: "Said plaintiff says he has a good and valid cause of action against Samuel Lefevre and Vincent A. Quarl, which, as to said Lefevre, is founded upon the endorsement to this plaintiff of certain promissory notes, and, as to said Lefevre and Quarl jointly, is founded upon the fraudulent transfer to said Lefevre of certain property more particularly described in the complaint in this cause, which transfer grows out of and is connected with the endorsement of said notes by the said Lefevre to this plaintiff. And he further says that said defendants, Lefevre and Quarl, are non-residents of the State of Indiana."

An affidavit and undertaking in attachment were also filed, and the writ issued at the suit of the appellee was levied on the stock standing in the name of Quarl on the books of the company. The complaint and affidavit for publication were filed on the 17th day of April, 1878. On the 11th day of June, 1878, proof of publication of notice was made. The notice reads as follows:

"*Oliver H. P. Abbett* v. *Samuel L. Lefevre, V. Augustus Quarl, Indianapolis Chair Manufacturing Company.*

"No. 21,993. Room 4. April Term, 1878.

"Be it known, that on the 17th day of April, 1878, the above named plaintiff, by his attorneys, filed in the office of the clerk of the Superior Court of Marion county, in the State of Indiana, his complaint against the above named defendants for attachment, and that on the said 17th day of April, 1878, the said plaintiff filed in the said clerk's office the affidavit of a competent person showing that said defendants, Samuel L. Lefevre and V. Augustus Quarl, are not residents of the State of Indiana. Now, therefore, by order of said court, said defendants last above named are hereby notified of the filing and pending of said complaint against them, and that unless they appear and answer or demur thereto at the calling of said cause on the second day of the term of said court, to be begun and held at the court-house, in the city of Indianapolis, on the first Monday in June, 1878, said com-

plaint and the matters and things therein contained and alleged will be heard and determined in their absence.

"AUSTIN H. BROWN, Clerk."

On the day last named the cause was submitted to the court and a finding and judgment entered in favor of the appellee. In December, 1879, Quarl appeared and filed a motion to open the judgment, and his motion was sustained. On the 3d day of January, 1880, he filed an answer of general denial, and on the first day of the following July, the cause was, by agreement, submitted to the court for trial. The trial resulted in a finding and judgment for the appellee. In September, 1880, a motion for a new trial was overruled, appeal was taken to the general term, and the judgment of the special term affirmed on the 2d day of May, 1881.

The appellant contends that no jurisdiction of the person of the defendants was obtained, and, therefore, no personal judgment could be rendered. We concur with counsel that no personal judgment can be rendered in a case where there is constructive service, but we can not concur in the conclusion which is deduced from this proposition. It does not follow that property fraudulently transferred may not be reached and subjected to sale in an action commenced by publication. A personal judgment is one which binds the defendant; while a judgment which operates upon property is, in its essential features, a judgment *in rem*. Such a judgment creates no personal liability, but operates upon the particular property which constitutes the subject of litigation. A judgment operating solely upon property can not be made the foundation of an action against the defendant; nevertheless it may effectively operate upon the particular property within the jurisdiction of the court. If the appellant is right, then a citizen of Indiana can never reach property within our jurisdiction, if it is claimed by a non-resident. If the appellant is correct, then our statutory provisions providing for attachments against non-resident debtors is absolutely null, for in every case it is necessary to ascertain the amount

of the debt in order to make a proper order of sale; and this proves his argument to be unsound.

It is a general principle that the process of the courts may reach and seize property within their jurisdiction. A man who brings property within the territorial jurisdiction of a State subjects it to the laws of that State. "If a foreigner or citizen of another State," says an able court, "send his property within a jurisdiction different from that where he resides, he impliedly submits it to the rules and regulations in force in the country where he places it. What the law protects, it has the right to regulate." *Clark* v. *Tarbell*, 58 N. H. 88. This general doctrine has been declared by other courts, among them our own. *Ames Iron Works* v. *Warren*, 76 Ind. 512; *Green* v. *VanBuskirk*, 7 Wall. 139; *Rice* v. *Courtis*, 32 Vt. 460. It is upon this general principle that our statutory provisions relative to notice by publication are founded. If property of a non-resident can not be reached by legal process upon constructive notice, then our statutes were passed in vain and are mere empty legislative declarations, without either force or meaning; for, if the person is not within the jurisdiction of the court, no personal judgment can be rendered, and if the judgment can not operate upon the property, then no effective judgment at all can be rendered, so that the result would be that the courts would be powerless to assist a citizen against a non-resident. Such a result would be a deplorable one. If the rule were that which appellant's argument asserts, a citizen with a chattel mortgage could not enforce it on property within our borders against a non-resident, nor could a creditor enforce a claim against a man who had fled to Canada and made it his residence, although he had abundance of property within the State. Nor, if the rule were as asserted, could property of non-resident corporations within our limits be reached. But the rule is not as contended for; property within our jurisdiction may be seized upon process issued upon constructive notice. This has been often decided with respect to attachment proceed-

ings.   Judge Story says: "Sometimes the seizure or attachment is purely nominal, as, for example, of a chip, or a cane, or a hat.   In other cases the seizure or attachment is *bona fide* of real property or personal property within the territory, or of debts due to the non-resident persons in the hands of their debtors who live within the country.   In such cases, for all the purposes of the suit, the existence of the property so seized or attached within the territory constitutes a just ground of proceeding to enforce the rights of the plaintiff to the extent of subjecting such property to execution upon the decree or judgment."   Story Conf. Laws, section 549.   Wharton says: "But when the thing is situate within the jurisdiction of the court, then proceedings *in rem* give a title to it against all the world."  Wharton Conf. Law, section 829.   He applies this doctrine to the seizure of goods under a writ of attachment, and cites *Ewer* v. *Coffin*, 1 Cush. 23; *Phelps* v. *Holker*, 1 Dall. 261; *Pawling* v. *Bird*, 13 Johns. 192; *Arndt* v. *Arndt*, 15 Ohio, 33; *McVicker* v. *Beedy*, 31 Maine, 314; *Bissell* v. *Briggs*, 9 Mass. 462.

Freeman says: "Proceedings by attachment are not, strictly speaking, *in rem*, and yet they are sometimes so spoken of; and in some respects their effect is more, and in others less comprehensive than the effect of proceedings *in personam*. Thus, by the seizure of the property, as where moneys are garnished, jurisdiction is acquired over the fund, so that orders may be made for its distribution or payment which will bind the owner, though he has not appeared nor been personally summoned in the case, provided such owner is in law or in fact a defendant in the action." Freeman Judg., section 607a.   The Supreme Court of the United States, in speaking of notice by publication, says: "Such service may also be sufficient in cases where the object of the action is to reach and dispose of property in the State, or of some interest therein, by enforcing a contract or a lien respecting the same, or to partition it among different owners, or, when the public is a party, to condemn and appropriate it for a pub-

lic purpose. In other words, such service may answer in all actions which are substantially proceedings *in rem.*" *Pennoyer* v. *Neff,* 95 U. S. 714, 727. The issuing of the writ and the levy by the sheriff brought the property within the jurisdiction of the court. But we need not stop at this point, for the power to issue a writ, effective to seize the property, was jurisdiction. It is well settled that authority to move in a cause, even to determine that there is authority, is jurisdiction. *Lantz* v. *Maffett, ante,* p. 23; *Snelson* v. *State, ex rel.,* 16 Ind. 29; *Board, etc.,* v. *Markle,* 46 Ind. 96; *Rhode Island* v. *Massachusetts,* 12 Peters, 657. There was, therefore, jurisdiction of the subject of the action, and the notice, under the provisions of the statute providing for notice by publication, gave jurisdiction of the person so far as necessary to determine the rights of the litigants in the particular property within the jurisdiction of the court.

It is said by appellant's counsel, that fraud is a question of fact, and, therefore, that such a question can not be tried upon constructive notice. This position is not tenable. Any question affecting the status of the specific property within the jurisdiction of the court and the rights of the parties in the property may be tried. The purpose of notice by publication is to give the best notice practicable to non-resident defendants, and thus enable the court to fully decide the controversy respecting property within its jurisdiction, no matter what form the question may assume. If this be not true, then in attachment proceedings fraud could never be shown where non-residents were parties, and that this can not be true is too clear to admit of debate.

The authority to hear and determine a cause is jurisdiction to try and decide all of the questions involved in the controversy. This principle is an ancient one, and even in the time when the contest between the chancery courts and the common law courts was hot and angry, it was recognized and enforced. Where the jurisdiction of the court once attaches it extends over the whole case, and the court will determine all

questions necessary to a full adjudication of the controversy. *Field* v. *Holzman*, 93 Ind. 205; *Carmichael* v. *Adams*, 91 Ind. 526; 1 Pomeroy Eq. Juris., section 231. The authority to determine whether property is subject to a lien, or liable to be seized under a writ of attachment, or liable to be applied to the payment of the claims of creditors, necessarily confers jurisdiction to determine the amount of the indebtedness, for, in almost every case, the court must ascertain the indebtedness. Thus, in an action to foreclose a mortgage, the court must ascertain the amount of the indebtedness, so, in an action to enforce a claim against property fraudulently conveyed, the amount of the debt must be ascertained, and so, in attachment proceedings, the amount of the indebtedness must be ascertained in order to make the proper order for the sale of the attached property. In such cases the court, in ascertaining the amount due, does not proceed against the person, but simply ascertains the amount that shall be adjudged a lien on the property, or that shall measure the extent of the creditor's claim against it. The statement of the amount in the finding and decree of the court in such cases is not a personal judgment, but is a mere statement of a finding upon one of the questions in the case.

Where there is some notice, although defective, the judgment is not void; if there is notice, although irregular and defective, there is jurisdiction. *Brown* v. *Goble*, 97 Ind. 86, auth. p. 89; *City of Terre Haute* v. *Beach*, 96 Ind. 143; *McCormick* v. *Webster*, 89 Ind. 105; *Oppenheim* v. *Pittsburgh, etc., R. W. Co.*, 85 Ind. 471; *Stout* v. *Woods*, 79 Ind. 108; *McAlpine* v. *Sweetser*, 76 Ind. 78; *Hume* v. *Conduitt*, 76 Ind. 598; *Muncey* v. *Joest*, 74 Ind. 409; *Morrow* v. *Weed*, 4 Iowa, 77; *Smith* v. *Engle*, 44 Iowa, 265; *Ballinger* v. *Tarbell*, 16 Iowa, 491; Freeman Judg., section 126. The rule with respect to notice by publication is the same as to notice by service of summons; there is, indeed, reason for being more liberal in cases of constructive notice than in cases where the service is by summons, for the defendant in the former class of cases is entitled, as

of right, to open the judgment and try the cause. It is a mistake to suppose that notice by publication is purely of statutory origin, for it was well known in chancery and at common law. 3 Blackstone Com. 283, 444; *Hahn* v. *Kelly*, 34 Cal. 391. There is, therefore, no valid reason why the same presumptions should not obtain in cases where the notice is by publication as where it is by service of summons, and the weight of authority is to that effect. *Nash* v. *Church*, 10 Wis. 244; *Gemmell* v. *Rice*, 13 Minn. 400; *Newcomb* v. *Newcomb*, 13 Bush, 544; *Lawler* v. *White*, 27 Texas, 250. In the recent case of *Dowell* v. *Lahr*, 97 Ind. 146, it was held, after full consideration, that the presumption was in favor of the validity of the judgment of the court, and that it could not be shown in a collateral attack that the notice, although by publication, was insufficient or irregular, and this decision is supported by the cases to which we have here referred and by other cases in our own reports. The notice in this case, therefore, conferred jurisdiction against Lefevre and the judgment against him can not be collaterally impeached. The appellant appeared and answered without questioning the jurisdiction, and, as to him, there was certainly jurisdiction, so that the judgment, as the record presents it to us, appears to have been rendered in a cause where the court had plenary jurisdiction. This is so because Lefevre can not and does not attack it, and the appellant has waived all questions of that character. Quarl is protected by the judgment as against any claim Lefevre might have, because, as expressly decided in *Dowell* v. *Lahr, supra*, Lefevre can not collaterally attack the judgment, and as to him it was not opened. So far as concerns the rights of the appellant, they were tried upon the issue tendered by his answer, and he, of course, can not now assert that there was no jurisdiction of his person, at least, in so far as concerned the property described in the complaint and seized under the writ of attachment. *Cool* v. *Peters Box, etc., Co.*, 87 Ind. 531.

The rule that obtained in chancery under the old system, requiring a judgment and an execution to be secured by the creditor before resorting to equitable relief, is invoked by appellant, and we are referred to many cases. Doubtless the general rule was as stated by counsel; whether it prevails under the reformed system of procedure is quite another question; but, without stopping just now to decide that question, and, for the present, granting that the rule does prevail, still it never did govern such a case as this—manifestly it could not apply—for against a non-resident the creditor could not possibly obtain a personal judgment. It is hardly necessary to cite authorities to prove that two notable exceptions to the rule were, where the debtor was dead or "beyond seas." *Kipper* v. *Glancey*, 2 Blackf. 356.

The case of *Scott* v. *Indianapolis Wagon Works*, 48 Ind. 75, decides, and rightly decides, that a creditor may maintain a bill against a debtor and his assignee to set aside a fraudulent transfer of the capital stock of a corporation. If that case stands it rules here, and not only do we feel bound to adhere to it upon the principle of *stare decisis*, but for the further reason that it asserts the true doctrine. We can conceive no reason why a fraudulent sale of capital stock in a corporation may not be declared void and the stock made liable to the claims of the creditors of the assignor. Stock is property, and the policy of the law is to enable creditors to make their debts out of the property of the debtor. What imaginable equity is there in allowing a fraudulent assignee to hold stock as against creditors? The property is of a peculiar nature, and when, as in this instance, transferred on the books of the company, it can be most effectively reached by a decree of court setting the transfer aside and subjecting the stock to the claim of the creditor. A recent writer says: "The tendency of the authorities is to reclaim every species of the debtor's property, prospective or contingent, for the creditor. As has been seen, transfers of intangible rights and choses in action, such as stocks, annuities, life insurance policies, book roy-

alties, patent rights, legacies, and choses in action generally, may be reached." Wait Fraud. Conv. 24. If the stock had remained in the name of the debtor, it could have been levied on by ordinary legal process, and it is, as another author says, the rule that, " whenever a statute enables a creditor to reach such property, either by attachment or execution, a transfer of it becomes liable to investigation on the ground of fraud." Bump Fraud. Conv., section 239. Equity will always aid the law, and here equity assistance is required to fully adjudicate upon the rights of the parties and completely protect the rights of the creditors. If the stock had remained in the name of Lefevre, then, perhaps, the writ of attachment would have accomplished all'that was necessary, but it was in the name of the fraudulent assignee, and the creditor had a right to have this fraudulent assignee's colorable title overthrown and all questions of ownership settled, so that ultimately his rights might be fully vindicated.

Suits to set aside fraudulent transfers of property are properly of equitable cognizance. This doctrine we have explicitly affirmed by our decisions, that such suits must be tried by the court, and not by a jury. Hendricks v. Frank, 86 Ind. 278; Evans v. Nealis, 87 Ind. 262. But, under our code, we have only one form of action and one tribunal, and while there may be issues in the same action of an equitable and legal nature, there is only one court for their trial, and hence they may be embraced in one action. We have, under this principle, held that a plaintiff may have an attachment and may also foreclose a mortgage. Martin v. Holland, 87 Ind. 105. Upon a like principle, it must be held that an attachment may issue in an action brought to set aside a fraudulent conveyance and subject to sale property fraudulently conveyed. It is, indeed, impossible to conceive how it could be otherwise, since there is but one court, and parties are required, wherever practicable, to settle the entire controversy in one action. We have many cases recognizing and enforcing this principle, among them Field v. Holzman, supra, Frank

v. *Kessler*, 30 Ind. 8, *Lindley* v. *Cross*, 31 Ind. 106. It is held in these cases that an action may be maintained to obtain judgment on a claim and also to set aside a fraudulent conveyance, and this is the principle which governs here. As the appellee had a right to an attachment, and a right to have the fraudulent transfer set aside, his proceedings were well brought, and as the court had general jurisdiction of such subjects, and as notice was given as provided by statute, the judgment was proper. The description of the property in the complaint brought the matter within the jurisdiction of the court; the notice by publication brought Lefevre into court as to that property, and the appellant, having been notified and having appeared without objecting to the process, is bound by that judgment.

Counsel cite *Griffin* v. *Nitcher*, 57 Maine, 270, *Tennent* v. *Battey*, 18 Kan. 324, *Weil* v. *Lankins*, 3 Neb. 384, *Bigelow* v. *Andress*, 31 Ill. 322, *Martin* v. *Michael*, 23 Mo. 50, *McMinn* v. *Whelan*, 27 Cal. 300, *Wiggins* v. *Armstrong*, 2 Johns. Ch. 144, *Dunlevy* v. *Tallmadge*, 32 N. Y. 457, *Jones* v. *Green*, 1 Wall. 330, and *Harrell* v. *Whitman*, 19 Ala. 135, and we have examined them but find them not in point. They declare the general rule, which prevailed under the old system, that only judgment creditors can maintain a suit to set aside a fraudulent conveyance, and as our law is different, the cases cited are not applicable. But even under the old system the rule was a general one to which there were, as we have seen, notable exceptions. It is clear that there must be exceptions, for no rule can be sound which requires a creditor to obtain a judgment *in personam* where there can be no jurisdiction of the person, since that would be to require him to do an impossible thing. If a personal judgment can not be obtained, then the creditor must be permitted to resort to the only remedy open to him, a proceeding against the property. The case before us comes within another exception to the general rule, for it is a proceeding in aid of a legal writ and essential to secure a complete adjustment of the rights of the

parties.    Bump Fraud. Con. 239; *Greenleaf* v. *Mumford,* 50
Barb. 543; *Mills* v. *Block,* 30 Barb. 549; *Rinchey* v. *Stryker,*
26 How. Pr. 75; *Falconer* v. *Freeman,* 4 Sandf. Ch. 565; *Kelly*
v. *Lane,* 42 Barb. 594.    But we need not stop to consider
the rule under the old system, for our statute and our deci-
sions fully and explicitly recognize the right of a general
creditor to set aside a fraudulent transfer of property.

Our statute and our decisions have long established the
rule that property fraudulently conveyed may be levied on,
and if this be true, as unquestionably it is, then it is subject
to attachment.    *Hankins* v. *Ingols,* 4 Blackf. 35; Herman
Ex. 147, section 17.

Fraudulent transfers are void as to creditors when prop-
erly assailed, and if void, of course the thing transferred may
be seized as the property of the assignor.    *Sanders* v. *Muegge,*
91 Ind. 214.    As said in the case cited: "But when the
creditor elects in any manner provided by law to avoid the
fraudulent conveyance, then such conveyance, as to him, is the
same as though it had never had an existence."    The text-
writers affirm that property fraudulently transferred may be
attached.    One of them says: "The simulated sale of land or
other property, though accompanied by delivery, would not
prevent its lawful attachment as the property of the fraudulent
grantor."    Waples Attachment, 154.    Another author says:
"A transfer made to hinder, delay, or defraud creditors, as to
such creditors, passes no title whatever; the property covered
thereby may be attached in the hands of the transferee for
the debts of assignor, and afterwards sold under execution."
Kneeland Attachment, section 334.    As the property is sub-
ject to attachment, the writ becomes a lien and equity may in-
terpose to remove impediments and make the lien perfect.
This is the ruling of the best reasoned cases, where the defend-
ants are non-residents, even under the old system, and certainly
must be the rule under our system.    *Hunt* v. *Field,* 1 Stock-
ton N. J. 36; *Sheafe* v. *Sheafe,* 40 N. H. 516; *Ward* v. *McKen-
zie,* 33 Texas, 297; *Pendleton* v. *Perkins,* 49 Mo. 565; *Scott* v.

*McMillen*, 1 Littell (Ky.) 302. The reasoning in the case last cited is strong and satisfactory and commends itself to our minds as it did to the minds of the court in *Kipper* v. *Glancey, supra,* where it was said by BLACKFORD, J., in delivering the opinion of the court: "Where the debtor has absconded, the practice should be the same as in the cases to which we have referred. By absconding from the State, the debtor prevents the proceeding against him at law, and his creditors should be permitted to apply to a court of chancery, as where judgments have been previously obtained, or the debtor is deceased."

If the question were an open one, we should not be inclined to yield to the New York decisions so earnestly pressed upon us by counsel, for we regard them as unsound in principle and unsupported by well grounded authority; and we, moreover, find that the decisions in that State are in hopeless conflict. The right of a creditor to invoke assistance in a case like the present was held in one of the cases to be perfectly clear, the judge who delivered the opinion saying: "Since the decision in *Rinchey* v. *Stryker*, I consider it no longer an open question, whether, when an attachment is issued under the code of procedure, the plaintiff in the action obtains such a lien on the property attached as will entitle him to the intervention of the equitable jurisdiction of the court to remove or set aside all fraudulent claims and transfers, or any other fraudulent obstacles, in the way of the realization of the lien, in case the plaintiff should recover a judgment." *Greenleaf* v. *Mumford*, 30 How. Pr. 30. The decision of the court is supported by the decisions of that State, and the remarks quoted are abundantly justified, although since that time a departure has apparently been taken. *Rinchey* v. *Stryker*, 28 N. Y. 45; *Kelly* v. *Lane*, 42 Barb: 594; *Thurber* v. *Blanck*, 50 N. Y. 80, see p. 86.

The rule which prevails with us gives a direct road to the end of the controversy, enables a citizen to proceed against the property of a non-resident debtor, while any other pro-

duces a multiplicity of actions, and in many instances would make it utterly impossible to reach the property of a non-resident debtor, and would, practically, nullify our statute providing for notifying non-residents by publication. A rule such as appellant contends for would make it useless to invoke the aid of a court of equity in any case of this character, for, if the plaintiff had personal judgment, his legal process would accomplish all that he could ask; if his legal process could not do this, then, according to appellant's theory, he is remediless.

We need only say of the other questions presented by the appellant, that they arise upon an erroneous view of the record.

Judgment affirmed.

Filed June 9, 1885.